S. Solomont & Sons Trust, Inc. & others *vs.* New England Theatres Operating Corporation & others.

Suffolk.    March 7, 8, 1950. — June 7, 1950.

Present: Qua, C.J., Lummus, Wilkins, & Counihan, JJ.

*Corporation,* Stockholder, Enforcement of claim of corporation. *Equity Pleading and Practice,* Plea.

The proper office of a plea in a suit in equity is to set forth some single fact or point whose establishment will defeat the suit or the part of the suit to which the plea applies.

A minority stockholder of a corporation, even after unsuccessful application to its directors and stockholders seeking the bringing of a suit by it against one of its officers and directors to enforce a claim for alleged wrongs to it, cannot maintain a suit in equity against it and such officer and director to enforce such claim where a majority of the stockholders, not dominated by the individual defendant but independent and disinterested, and acting reasonably and in good faith, have voted that in their judgment it is not in the best interest of the corporation to attempt the enforcement thereof.

Bill in equity, filed in the Superior Court on November 27, 1946.

The defendants filed pleas. Interlocutory decrees were entered by order of *Williams,* J., adjudging the pleas to be sufficient in law, denying a motion by the plaintiffs that the pleas be overruled as insufficient in law, and denying a motion by the plaintiffs to expunge the pleas as defective and improper. Following a hearing by *Murray,* J., as to the truth of the pleas, there were entered by his order interlocutory decrees sustaining them and final decrees dismissing

the bill as against all the defendants. The plaintiffs appealed from all the decrees.

*C. B. Cross,* (*J. F. Groden & C. C. Worth* with him,) for the plaintiffs.

*A. E. Whittemore,* (*J. J. Geehern & J. R. Hally* with him,) for the defendants New England Theatres Operating Corporation and others.

*H. LeB. Sampson,* (*N. Landstrom* with him,) for the defendants Mullin and another.

*A. C. Keough* of New York, for the defendants Paramount Film Distributing Corporation and another, submitted a brief.

WILKINS, J. The principal question, presented by the sustaining of pleas to the bill of complaint, is whether an independent, disinterested majority of the stockholders, acting reasonably and in good faith, can effectively vote that in their judgment it is not in the best interest of a corporation to assert on its behalf certain claims against its principal executives and others.

The plaintiffs, minority stockholders of the defendant New England Theatres Operating Corporation, a Massachusetts corporation (hereinafter called Netoco), by this bill in equity seek to enforce claims of Netoco and of two other corporate defendants in one of which Netoco, but not the plaintiffs, holds stock, against the defendant Paramount Film Distributing Corporation, a Delaware corporation (hereinafter called Paramount Distributing), the defendant New England Theatres, Inc., a Delaware corporation (hereinafter called New England), and the defendants Martin J. Mullin and Samuel Pinanski. The two other corporate defendants, the rights of which are thus sought to be enforced, are Publix Netoco Theatres Corporation, a Delaware corporation (hereinafter called Publix Netoco), and M & P Theatres Corporation, a Massachusetts corporation (hereinafter called M & P Corporation). Netoco and Paramount Pictures, Inc., a New York corporation not a party to this suit, each owns one half of the capital stock of Publix Netoco. Paramount Distributing and New England are wholly owned

subsidiaries of Paramount Pictures, Inc. The capital stock of M & P Corporation is owned one third by Publix Netoco and two thirds by New England.

The plaintiff S. Solomont & Sons Trust, Inc., is the owner of one thousand four hundred forty-nine and fifty-eight one-hundredths shares of preferred stock and forty-two thousand seven hundred four and eighty-five one-hundredths shares of common stock of Netoco. The plaintiff James Solomont owns ten shares of preferred and ten thousand shares of common stock of Netoco. The plaintiff Oscar H. Solomont owns eighty shares of preferred stock of Netoco. The outstanding capital stock of Netoco consists of twelve thousand nine hundred seventeen preferred, and two hundred twenty thousand two hundred twenty-three common, shares. At all material times, because of failure to pay dividends, the preferred stock alone had voting power. Netoco, formed in 1928, was originally an operating company. Since 1930 it has been a holding company, having, in addition to the one-half interest in Publix Netoco, a majority interest in certain theatres in East Boston.

Publix Netoco was formed in 1930, pursuant to an agreement between Netoco and Paramount Publix Corporation, then a major film producing company, and operates moving picture theatres in Massachusetts, Maine, and Connecticut. It owned or controlled twenty-six theatres at first and forty-two theatres in 1945. Until January, 1933, the Publix Netoco theatres were managed by Publix Theatres Corporation, a subsidiary of Paramount Publix Corporation. The last named corporation went into receivership and later into bankruptcy, and the management of the Publix Netoco theatres was undertaken by M & P Corporation.

Paramount Pictures, Inc., is engaged in the business of producing, distributing, and exhibiting motion pictures, and is the corporation which emerged from the bankruptcy of Paramount Publix Corporation. Netoco and Paramount Pictures, Inc., each is entitled to elect three directors and, directly or indirectly, certain officers of Publix Netoco.

M & P Corporation was organized on February 1, 1933,

by Mullin and Pinanski, who had been employees of Paramount Publix Corporation. They set up an organization to supervise the management of theatres, employing among others former employees of Publix Theatres Corporation, and assumed the management of Publix Netoco's theatres and the theatres in the New England States owned or controlled by Paramount Publix Corporation, and later of other theatres. There are two hundred shares of capital stock of M & P Corporation. At the outset Mullin and Pinanski each paid cash for one hundred shares, and shortly thereafter transferred the two hundred shares to the trustees in bankruptcy of Paramount Publix Corporation, who in 1936 transferred them to New England, which owned or controlled various theatres in the New England States. In October, 1938, New England transferred sixty-six and two-thirds shares to Publix Netoco. M & P Corporation has operated solely as a management corporation on a non-profit basis. Its operating costs, including salaries paid to Mullin and Pinanski, are charged as the cost of management to the owners of theatres employing its services. Since December 29, 1935, under management contracts hereinafter referred to, M & P Corporation has supervised the management of the theatres in which Publix Netoco and New England have been jointly or severally interested. Mullin and Pinanski have been the active managers of M & P Corporation and in control of its policy and operations, including the purchase of its services and supplies and the hiring of its employees. By a personal agreement antedating the formation of M & P Corporation Mullin and Pinanski have shared, each with the other, his business income from whatever source derived.

Pinanski is, and has been from the time of organization, president and a director of Netoco, Publix Netoco, and M & P Corporation. He is president and a director of New England and an executive officer and a director of most if not all of the subsidiaries of Publix Netoco and New England. He has been continuously engaged in the theatre business since 1913, and there are approximately fifty cor-

porations engaged in some phase of the moving picture theatre business of which he is president and a director.

Mullin is and has been from the time of organization vice-president and a director of M & P Corporation. Since about 1933 he has been vice-president and a director of Publix Netoco. For many years he has been vice-president and a director of New England. Although a stockholder, he has not been an officer or a director of Netoco at any time. He has been continuously engaged in some aspect of the moving picture theatre business since 1916, and is an officer and a director of about fifty corporations engaged in some phase of that business, including most of the subsidiaries of Publix Netoco and New England.

Paramount Distributing is engaged in the business of renting films for exhibition in moving picture theatres.

After two or more years of theatre management by M & P Corporation under the control of Mullin and Pinanski during which an efficient organization was developed, a written management contract dated January 31, 1936, was entered into by Publix Netoco, New England, M & P Corporation, Mullin, and Pinanski. The contract provided that in the period from December 29, 1935, to July 1, 1939, Publix Netoco and New England would employ M & P Corporation, so long as Mullin and Pinanski should be in charge of its business, to supervise the operation and management of the theatres and other business of Publix Netoco and New England. There was a provision for the payment to Mullin and Pinanski of a fixed weekly compensation by M & P Corporation and of an additional percentage compensation by Publix Netoco and New England based on the respective net earnings of each. On October 14, 1938, the same parties entered into a similar contract for the period from July 2, 1939, to July 1, 1944, under which the percentage compensation was less favorable to Mullin and Pinanski. By a contract dated April 30, 1943, the 1938 contract was extended until January 3, 1948. The employment of M & P Corporation and Mullin and Pinanski was continued, but the permissible activities of Mullin and Pinanski outside

the contract were more restricted than previously. The amounts paid by Publix Netoco to Mullin and Pinanski from 1936 to 1945 averaged for each theatre less than $20 weekly, and about $22 weekly if the amounts paid by others jointly interested in those theatres should be included. In about the same period Mullin and Pinanski received from New England for management of theatres in its circuit payments averaging $44 weekly for each theatre. Netoco was interested to the extent of one half of the payments made by Publix Netoco and not at all in those made by New England. In 1930 when Netoco operated the twenty-six theatres which it then owned or controlled, it paid three annual salaries of $15,600 each for "top management." The amounts paid to Mullin and Pinanski under the management contracts averaged less at a time when there were more theatres to manage and the financial condition of the company paying them was far better.

Matters alleged in the bill of complaint and now argued by the plaintiffs on behalf of Netoco and Publix Netoco to have been wrongs are the following: (1) The purchase at a discount of a $24,000 note of Netoco by Mullin and Pinanski with an ensuing profit to them of $7,920. (2) The making of a similar purchase of notes of Publix Netoco and an ensuing profit of $900 to Mullin and Pinanski. (3) The carrying out of a plan to gain stock control of Netoco by Mullin and Pinanski through the purchase for their family trusts and "other insiders" of two thousand eight hundred nine shares of preferred and eight thousand nine hundred eighty-four and one half shares of common stock. (4) The settlement of certain anti-trust suits, relating to the Humboldt Theatre, brought against Netoco, Publix Netoco, M & P Corporation, New England, Mullin, and Pinanski by the payment of $42,500 each by Publix Netoco and New England in addition to the defendants' counsel fees. (5) Unconscionable and excessive compensation to Mullin and Pinanski under the three management contracts[1] with

[1] The bill alleges that the first contract of January 31, 1936, was favored by all the principal stockholders of Netoco, including the plaintiffs.

Publix Netoco, M & P Corporation, and New England, in return for which Mullin and Pinanski caused Publix Netoco theatres to pay excessive film rentals to Paramount Distributing and favored New England's theatres over those of Publix Netoco in the matter of film clearances. The contracts are also alleged to have violated the Federal anti-trust laws.

The bill further alleges that these wrongs were brought to the attention of the boards of directors of Netoco, Publix Netoco, M & P Corporation, and New England "with a full disclosure of all the facts," and that each corporation was asked to take corrective action and to bring suit; that each board of directors voted not to take action; that the "said complaints with complete reasons therefor were presented at a stockholders' meeting" of Netoco with a similar request for action; that a majority of the stockholders voted not to take action; that all such requests and complaints proved unavailing because Mullin and Pinanski and others are in combination with and in control of the said corporations, their officers and directors; and that "they have wilfully disregarded their duty to protect the interests" of Publix Netoco and Netoco and their stockholders.

The defendants, other than New England and Paramount Distributing, each filed pleas to the bill, setting up, in general, that at a meeting of the stockholders of Netoco held on August 7, 1946, a majority, acting reasonably, in good faith, and according to their own judgment as to what was in the best interest of the corporation, had voted not to assert the causes of action upon which the suit is grounded, and in all but one instance had ratified and approved them. [1] A judge of the Superior Court adjudged the pleas to be sufficient in law. Various interlocutory decrees, from which the plaintiffs appealed, were entered as to each plea, one adjudging the plea to be sufficient in law and allowing the plea; another denying the plaintiffs' motion that the pleas be overruled as insufficient in law; and a third denying the

---

[1] The pleas set up, and the judge found, that one matter, relating to unreasonable film clearances favoring Paramount Distributing, had not been presented to the board of directors. The plaintiffs have not argued this matter.

plaintiffs' motion that the pleas be expunged as defective and improper.

The pleas were then heard as to their truth by another judge of the Superior Court, at whose order were entered interlocutory decrees sustaining the pleas and final decrees dismissing the bill, from all of which the plaintiffs appealed. The evidence is not reported, but the judge made extended findings of fact,[1] which he adopted as a report under G. L. (Ter. Ed.) c. 214, § 23, as appearing in St. 1947, c. 365, § 2, if that statute is applicable. These facts stated herein are from these findings.

James Solomont was one of the original directors of Netoco and of Publix Netoco. He retired voluntarily, and was succeeded by a nephew. In 1939 when the latter resigned, James Solomont sought unsuccessfully again to become a member of the boards of directors. His effort was opposed by Pinanski and other holders of substantial stock interests in the belief that his return was not in the interests of the corporations. This belief on the part of Pinanski was based, warrantably in some instances, upon his consideration of Solomont's judgment or actions in a number of business matters. In 1945 counsel was engaged to bring about the election of James Solomont as director. These efforts failing, an investigation of the affairs of Netoco, Publix Netoco, and M & P Corporation through certified public accountants was undertaken by counsel for the plaintiffs. There followed on September 7, 1945, a meeting of the Netoco stockholders at which were passed votes approving and ratifying certain acts of the officers and directors of Netoco and of Publix Netoco. Counsel for the plaintiffs continued his investigation, and on April 11, 1946, wrote a letter to Netoco and its directors demanding that suit be brought against Mullin, Pinanski, and some of the corporations now defendants. Reference of the matter by the directors to the stockholders resulted in the meeting of August 7, 1946.

At no time has the majority of the outstanding stock of

---

[1] Incorporated in the findings is a stenographic report of the stockholders' meeting of August 7, 1946.

Netoco been owned or held by Mullin and Pinanski. The majority of the stock is held by persons, other than Mullin and Pinanski, who are not under their control and domination. At the stockholders' meeting of August 7, 1946, the holders of twelve thousand seven hundred sixty-three and forty-two one-hundredths preferred shares were present or represented by proxy. An opportunity for full discussion of the plaintiffs' claims was afforded before any votes were taken. Statements were made by counsel for the board of directors, by counsel for the plaintiffs, and by counsel for Mullin and Pinanski. Nineteen votes were taken and passed. On all but one, the plaintiffs voted one thousand five hundred thirty-nine and fifty-eight one-hundredths shares against the action favored by the majority, and were joined in some votes by a holder of four hundred shares. On each, at least eight thousand three hundred eighty-one and seventy-six one-hundredths shares were voted in favor. Pinanski and Mullin, holders of one thousand seven hundred fifty-seven and eight one-hundredths and two hundred nineteen shares, respectively, did not vote their stock, nor did Pinanski's brother and daughter, holders of three hundred sixty-five and one hundred one shares, respectively. From the matters presented at the meeting to the stockholders and otherwise brought to their attention or known to them, concerning the claims made by the plaintiffs, the stockholders could reasonably take the action expressed in their votes. Neither Mullin nor Pinanski requested anyone to vote at the meeting in any particular manner or took any step to control the votes of anyone.

There were detailed findings as to the reasons underlying the votes of the several stockholders and their proxies constituting the majority. In substance it was found in most cases that each did not consider it in the best interest of Netoco to bring suit.

At the stockholders' meeting of August 7, 1946, there were votes not to sue on the following matters: to rescind the management contract of April 30, 1943; to recover compensation, claimed to be excessive, paid to Mullin and Pinan-

ski; to enjoin further payment of such compensation beyond a fixed amount; to recover alleged excessive film rentals paid to Paramount Pictures, Inc.; to recover the profit of $7,920 on the note of Netoco and of $900 on notes of Publix Netoco; to recover certain shares of preferred and common stock of Netoco purchased by Mullin, Pinanski, trusts controlled by them, or members of their families; and to recover payments made in connection with certain Humboldt Theatre anti-trust suits including counsel fees therein. Other votes were to approve as taken in good faith, in the exercise of proper judgment, and in the interest of Publix Netoco, the action of the directors of Publix Netoco, authorizing the execution and delivery of the management contracts of October 14, 1938, and of April 30, 1943; to authorize and instruct the directors in dealing with the plaintiffs' claims to treat the management contracts as having been fairly made in good faith by all the parties, and as providing for reasonable compensation to Mullin, Pinanski, and M & P Corporation; and to approve payments, under the management contracts, of compensation to Mullin, Pinanski, and M & P Corporation. One vote was that it was "not in the interest of the corporation to attempt to terminate or to have terminated the existing management contract . . . on any of the grounds alleged in the requests or claims made by or on behalf of James Solomont and S. Solomont & Sons Trust, Inc., prior to the calling of this meeting, and that the directors be further authorized and instructed to consider whether the decision made in the District Court of the United States for the Southern District of New York in the case of *United States* v. *Paramount Pictures Inc. et al.*[1] since this meeting was called constitutes a reason for changing said contract, to take advice of counsel on that question, and to take such action as they may deem advisable with respect to that question."

Among the factors which the stockholders could have taken into account are these. The plaintiffs demanded that

---

[1] 66 Fed. Sup. 323. For later proceedings, see 70 Fed. Sup. 53; 334 U. S. 131.

the corporation engage in controversy with its principal executives, whose administration had been, and was continuing to be, most successful. Under their management the once precarious financial condition of the corporation had greatly improved, its indebtedness had been discharged, and it had begun to pay dividends. The plaintiffs also demanded that the corporation engage in litigation with those controlling its source of films. Aside from the doubtfulness of success, there were to be considered the expense; the time of officers and employees to be diverted to and consumed in litigation; the probability of losing the services of the executives in whom the great majority of stockholders had confidence and upon whom the continued success of the corporation might be thought to depend; the effect of antagonizing those controlling its film supply; and the risk of countersuits and substantial claims for damages. As to the purchase of the notes of Netoco and Publix Netoco, the stockholders could have taken into account the financial inability of either corporation to buy them up, and the action of Mullin and Pinanski with the approval of the respective boards of directors to prevent the notes from falling into unfriendly hands. As to the acquisition of capital stock of Netoco, they could have given weight to the fact that under the articles of organization the corporation, being in arrears in the payment of dividends, was prohibited from making such purchases itself. As to the Humboldt Theatre anti-trust settlement, the stockholders could have given consideration to the fact that Mullin and Pinanski in their management of theatres for Publix Netoco and New England in competition with the Humboldt Theatre had pursued conduct which had been customary for many years in the business; that the cases had been settled on the advice of counsel in order to save expense; that the defendants in those cases did not admit liability but, on the contrary, denied it; and that the settlement was made on the basis that the two corporations should divide the entire cost. As to excessive film rentals, the stockholders could have thought that the plaintiffs at the meeting of August 7,

1946, offered nothing more substantial in support of this complaint than its repetition.

We do not consider formal objections now that the issues raised by the pleas have been heard on the merits. Questions of substance are alone material. It will be decisive of the case if the facts found make out a good defence to the bill. *Frost* v. *Kendall*, 320 Mass. 623, 626–627. The substantial rights of the plaintiffs are not injuriously affected if the course taken reaches the inevitable result of the case. *Freeman* v. *Robinson*, 238 Mass. 449, 452. *Slocum* v. *Natural Products Co.* 292 Mass. 455, 458. *Kelley* v. *American Sugar Refining Co.* 311 Mass. 617, 620. The proper office of a plea is to set forth some single fact or point, the establishment of which will defeat the suit or the part of the suit to which the plea applies. *Reilly* v. *Selectmen of Blackstone*, 266 Mass. 503, 507. For the purpose of the hearing on the plea the allegations of the bill not contradicted by the plea are admitted to be true. *Cole* v. *Wells*, 224 Mass. 504, 513. *Moran* v. *Manning*, 306 Mass. 404, 409. Each plea in the case at bar raises as to each ground of complaint the single defence or point that an independent, disinterested majority of the stockholders, acting reasonably and in good faith, have voted not to assert a claim on behalf of the corporation. While it is not decisive, we do not accept a contention of the plaintiffs that the pleas necessarily admit all allegations of the bill except those of domination and control, or that they allege in effect that "the suit is barred by the votes of the disinterested, uncontrolled majority of stockholders who acted in good faith because they believed the complaints either were not true, although in fact they were true, or if true, they felt that it was not for the best interests of the corporation to bring suit." The bill alleges that the "complaints with complete reasons therefor were presented at a stockholders' meeting." In our view of the proper effect to be given the pleas, any given complaint might or might not be taken to be true. Reasonable action is an important part of the defence. Such action could involve a determination by the stockholders that a given complaint was ground-

less, or at least not substantiated, as well as a decision that in their judgment, on these or other grounds, its prosecution was not wise from the corporate point of view. In the present posture of the case the question is whether the defence is legally a bar.

It will be perceived that some of the alleged wrongs related not to the affairs of Netoco but to the affairs of Publix Netoco in which Netoco has a one-half stock interest, or to the affairs of M & P Corporation, in which Publix Netoco has a one-third stock interest. We assume that such a double derivative or multiple derivative suit will lie. *United States Lines, Inc.* v. *United States Lines Co.* 96 Fed. (2d) 148, 151 (C. C. A. 2). *Goldstein* v. *Groesbeck,* 142 Fed. (2d) 422, 425 (C. C. A. 2), certiorari denied sub nomine *Groesbeck* v. *Goldstein,* 323 U. S. 737. *Hirshhorn* v. *Mine Safety Appliances Co.* 54 Fed. Sup. 588, 591, 592 (D. C. W. D. Pa.). *Martin* v. *D. B. Martin Co.* 10 Del. Ch. 211, 215–220. *Holmes* v. *Camp,* 180 App. Div. (N. Y.) 409, 412. *Druckerman* v. *Harbord,* 174 Misc. (N. Y.) 1077, 1078–1079. Compare *Busch* v. *Mary A. Riddle Co. of Delaware,* 283 Fed. 443 (D. C. Del.); *Schneider* v. *Greater M. & S. Circuit, Inc.* 144 Misc. (N. Y.) 534, 541.

Much of the plaintiffs' argument is devoted to limitations upon the power of the stockholders to ratify wrongs to a corporation. *Dana* v. *Morgan,* 219 Fed. 313, 315 (D. C. S. D. N. Y.), affirmed 232 Fed. 85 (C. C. A. 2). *Hodgman* v. *Atlantic Refining Co.* 300 Fed. 590, 599 (D. C. Del.), certiorari denied 273 U. S. 731. *Continental Securities Co.* v. *Belmont,* 206 N. Y. 7, 16–18. *Pollitz* v, *Wabash Railroad,* 207 N. Y. 113, 127. *United States Steel Corp.* v. *Hodge,* 19 Dick. (N. J.) 807, 814, 817–818. Cook, Corporations (8th ed.) § 730. Fletcher, Cyc. Corporations, § 5795. We shall not rest our decision upon any power to ratify. The question whether it is good judgment to sue is quite apart from the question of ratification. This is a distinction of substance and not of form.

The chief issue for determination is whether a minority of the stockholders, however small, have a legal right to

insist that suit shall be brought by a corporation against its officers or directors whenever a charge is made against them, even though a majority of the stockholders, undominated and uncontrolled, acting reasonably and in good faith, deem it not to be consonant with the best interests of the cor- ·poration that such suit be brought. Stated in another way: when in the judgment of the many, in opposition to that of the few, it would be unwise, or even ruinous, for the corporation to bring the suit, is it nevertheless the legal right of the few to force the bringing of the suit? The defendants contend that there is no right in the minority to determine the question in a manner contrary to such a judgment of the majority, whereas the plaintiffs maintain that public policy demands that the minority should be so entitled, and that the "fact that a single dissenting stockholder may successfully complain is a sound and healthy deterrent to temptation to stray from the path of undivided loyalty."

There has been no holding on this precise point in this Commonwealth. In *Dunphy* v. *Traveller Newspaper Association,* 146 Mass. 495, where a demurrer was sustained to a stockholders' bill partly because of failure to make application to the directors, it was said, at pages 497–498: "It ·would be contrary to the fundamental principles of corporate organization to hold that a single shareholder can at any time launch the corporation into litigation to obtain from ·another what he deems to be due to it, or to prevent methods of management which he thinks unwise. Intelligent and honest men differ upon questions of business policy. It is not always best to insist upon all one's rights; and a corporation acting by its directors, or by vote of its members, may properly refuse to bring a suit which one of its stockholders believes should be prosecuted. In such a case the will of the majority must control. It is only when the action of a corporation in refusing to proceed at the request of a stockholder is fraudulent as against him, or in disregard of his rights, that he can maintain a suit in his own name in the corporate right. The court cannot interfere with the management of corporations in matters which are properly

within their discretion, so long as their discretion is fairly exercised, and it is always assumed until the contrary appears, that they and their officers obey the law, and act in good faith towards all their members. Even when their acts are ultra vires, or otherwise illegal, a complaining member must first seek his remedy within the corporation."

As a general proposition, it is not doubted that directors or stockholders, as a matter of business policy, may refuse to bring a suit. The issue here is whether an exception exists requiring a contrary conclusion where the grounds of suit embrace charges against one or more officers or directors.

The general proposition is merely one aspect of the rule set forth in *Bartlett* v. *New York, New Haven & Hartford Railroad*, 221 Mass. 530: "A stockholder . . . must make an earnest and sincere and not a feigned or simulated effort to induce the managing officers of the corporation to take remedial action in its name. If he fails in this quarter, unless there is adequate reason to the contrary, he must resort to the stockholders and make an honest attempt to convince them that action ought to be instituted. Directors and the majority of stockholders are presumed to be acting, not fraudulently, but with fair discretion in obedience to law, and in good faith toward all concerned, and with a consciousness of duty toward the corporation and all its stockholders. It is an implied condition of becoming a stockholder in a corporation that its general policy shall be determined by the holders of a majority of the stock and that disagreements as to its dominating policy and as to the details of its management shall be settled by the stockholders, and that recourse cannot be had to the courts to adjust difficulties of this sort. It is only from actual necessity, in order to prevent a failure of justice, that a suit in equity for the benefit of the corporation can be maintained by a stockholder [page 532]. . . . If the majority of the board of directors of a corporation are incorruptible, free from collusion with wrongdoers,

and ready to act for the best interests of the corporation, there is no reason why an individual stockholder should be permitted to involve the corporation in lawsuits [page 538]." See *Hayden* v. *Perfection Cooler Co.* 227 Mass. 589, 592; *Tymchuk* v*.* *St. Nicholas Russian Benefit Society, Inc.* 269 Mass. 595, 597.

The plaintiffs contend that the issue is foreclosed by decisions of this court. In *Brewer* v. *Boston Theatre*, 104 Mass. 378, 395, it was said: "A majority of the corporators have no right to exercise the control over the corporate management, which legitimately belongs to them, for the purpose of appropriating the corporate property or its avails or income to themselves or to any of the shareholders, to the exclusion or prejudice of the others. And if any have obtained such unfair advantage by fraud or abuse of the trust confided to them as officers or agents of the corporation, it is not in the power of a majority to ratify or condone the fraud and breach of trust, so far as it affects the rights of the others, without reasonable restitution." In *Von Arnim* v. *American Tube Works*, 188 Mass. 515, 518, the statement was made, "Even if a majority of the stockholders consented to ratify an illegal use of its funds, their assent would not bind a protesting minority, or prevent them from obtaining appropriate equitable relief."

The plaintiffs urge that in the *Brewer* and *Von Arnim* cases, although the wrongdoing directors were the majority stockholders, the court nevertheless intended to lay down a general rule applicable to all cases, including those where the majority stockholders are not the active wrongdoers. Such a pronouncement, however, would have been beyond the scope of either case. On principle, we perceive no reason why the usual rule recognizing that it is for the corporation to decide questions of business policy should be subject to an exception limiting the corporate power where a charge is made against an officer or director but where an independent, disinterested majority of the stockholders acting reasonably and in good faith have voted that in their judgment it is not in the best interest of the corporation to sue.

We do not believe that in such a case the power of effective decision shifts from a majority to a minority of the stockholders. We know of no principle requiring that a corporation once wronged cannot exercise an honest judgment to refrain from doing that which may wrong it even more. We are of opinion that the various rulings in the court below were right.

We have carefully considered the cases from other jurisdictions which the industry of counsel has brought to our attention. We do not deem it profitable to discuss them, as we have reached our decision by following what we consider to be the path indicated by cases decided by this court.

*Interlocutory decrees affirmed.*
*Final decrees affirmed with costs.*