S. Harold **LEVITT**, Executor of the Estate
of Martin M. Levitt, deceased

v.

Edward C. **JOHNSON**, 2d, et al.

Civ. A. No. 63–689.

United States District Court
D. Massachusetts.

Oct. 21, 1963.

# 806

Benedict Wolf, New York City, argued the motion, and S. Roy Remar, Boston, Mass., of counsel, for plaintiff.

Edward B. Hanify, Boston, Mass., argued the motion, and Ropes & Gray, Joseph P. Rooney and Gaston, Snow, Motley & Holt, Boston, Mass., for corporate defendants (other than Fidelity Capital Fund) and defendant Johnson.

James D. St. Clair and Hale & Dorr, Boston, Mass., for individual defendants other than defendant Johnson.

Sumner H. Babcock and Bingham, Dana & Gould, Boston, Mass., for defendant Fidelity Capital Fund.

WYZANSKI, District Judge.

This is a stockholder's derivative action seeking to prosecute on behalf of a Massachusetts corporation, Fidelity Capital Fund, Inc. (hereinafter called "Fund") a claim that its directors and others injured the corporation by violations of the federal Investment Company Act of 1940, 15 U.S.C. § 80a–1 et seq., (hereinafter called the Act), and by waste of corporate assets in violation of the law of the Commonwealth of Massachusetts. Most of the claimed violations and waste are related to the allegedly excessive advisory fees which Fund paid to Fidelity Management & Research Company (hereinafter called FMR), pursuant to an Advisory and Service Contract made on January 28, 1958, amended March 12, 1958, and, admittedly, "approved by the stockholders on March 15, 1961." [Complaint, par. 10].

Plaintiff's capacity to bring this action is alleged in the complaint as follows:

"2. Plaintiff is the Executor of the Estate of Martin M. Levitt, Letters Testamentary having been issued to him by the Probate Court of Cook County, Illinois, on July 11, 1962. Martin Levitt, the decedent, owned stock in the Fund continuously from April 15, 1959, to the date of his death on June 26, 1962, and said stock has remained in his estate continuously from that date to the present time. Plaintiff was appointed Ancillary Administrator by Decree, Suffolk Probate Court, Docket number 424569."

Defendants include Fund, its directors, FMR, and three other corporations.

The wrongs claimed to have been committed by defendants are extensively set forth in the 20 page complaint. For present purposes, the following three paragraphs illustrate, without comprehensively summarizing, the kind of wrongs alleged:

1. The contracts set terms grossly unfair to Fund, and constituted embezzlement in violation of § 37 of the Act, inasmuch as (a) fees were based on a fixed percentage of Fund's net assets, and hence increased in direct proportion to the increase in such assets, (b) fees were at rates higher than those charged by FMR and by others for similar services, and (c) the rates fail to reflect the fact that FMR primarily advises other investment trusts which get much of the benefit of what FMR does for Fund.

2. The contracts were not the result of arm's length bargaining but were adopted as a result of gross negligence of, and disregard of duty by, the directors of Fund. The directors made and renewed these contracts without pressing for a reduction of the rates as assets increased, without adequately considering possible advisers other than FMR, and without seeking a proper allocation among FMR's different clients of the service charges.

3. A majority of Fund's directors have been persons affiliated, within the meaning of § 2(a) (3) of the Act, with FMR and therefore the contracts were in violation of §§ 10(a) and 10(b) of the Act and were null and void under § 47 of the Act.

Most of the wrongs are alleged to have continued until the complaint was filed.

The complaint recites that it would have been futile for plaintiff to make demand upon Fund's Board of Directors because they are among the alleged wrongdoers. Then with respect to a demand upon stockholders, the complaint recites:

"44. Demand upon the stockholders of the Fund to bring this action is unnecessary and would be futile because:

"(a) The transactions complained of were in violation of the law and constituted a waste of corporate assets and are therefore incapable of ratification by less than the unanimous vote of all of the stockholders.

"(b) Under the charter and by-laws of the Fund, the management of its affairs, including the bringing of suits, is entrusted to the Board of Directors, and not to the stockholders. The stockholders cannot, by resolution or otherwise, require the Fund or its Board of Directors to bring an action.

"(c) A stockholder resolution demanding the bringing of a suit would be futile since control of the action would be in the hands of the very persons who are alleged to be the wrongdoers and cannot be properly prosecuted by them.

"(d) The Fund has more than 48,-000 stockholders scattered all over the United States whose identity is subject to frequent changes. A demand upon the stockholders to take action would cast an unconscionable financial burden on the plaintiff in that the plaintiff would have to solicit proxies from all of the stockholders residing in every State of the Union and foreign countries. It would involve the conduct of a proxy fight, a proxy fight which would entail prohibitive expenses and would cause undue loss of time with the danger that the claims alleged might be barred by the Statute of Limitations."

In conclusion, plaintiff prays that the contracts between Fund and FMR be declared void, that defendants repay to Fund all investment advisory fees received by them since April 1959, and that defendants account to Fund for their profits resulting from the matters alleged.

Defendants have moved to dismiss the complaint on the grounds that this Court lacks jurisdiction of the subject matter, that the complaint does not comply with the requirements of Fed.Civ.Proc. Rule 23(b), and that the complaint fails to state a claim upon which relief can be granted. Supporting affidavits were served by defendants by mail on October 4, 1963. Cf. Rule 5(b). By their brief, filed October 11, defendants request that their "motions should be treated as ones for summary judgment", as permitted by the last sentence of Rule 12(b).

Supplementing their written motions, defendants have suggested that the Court should dismiss this action because, as defendants' affidavit shows, the Massachusetts Probate Court, contrary to the recital in the complaint, had not in fact appointed S. Harold Levitt as ancillary administrator.

I.

■ This Court has jurisdiction over the subject matter of the complaint. 15 U.S.C. § 80a–43; Brown v. Bullock, 2nd Cir., 294 F.2d 415.

II.

■ Plaintiff has capacity to bring this action. According to the complaint, the Illinois probate court issued to plaintiff as executor letters testamentary on July 11, 1962; from then until August 15, 1963, when this complaint was filed, he held the legal title to shares in Fund; and part of the wrongs are alleged to have been caused during that period. In other words, plaintiff sues as a trustee holding the legal title of Fund shares as part of an Illinois estate not only as the representative of a decedent. Plaintiff is entitled to complain in the United States District Court for the District of Massachusetts of an injury to the corporation

caused during the time he was the legal owner, even if the ownership was for the benefit of others. Cf. Restatement, Conflict of Laws § 508; Talmage Adm. v. Chapel, 15 Tyng 71, 73; Cannon v. Cannon, 228 N.C. 211, 45 S.E.2d 34; Goodrich, Conflict of Laws, § 189 (3rd ed. 1949); Ehrenzweig, Conflict of Laws, p. 48. The situation is unlike that where the cause of action is based exclusively on transactions occurring during the life of the decedent. Those would fall within the oft-criticized rule (see Ehrenzweig, Conflict of Laws, p. 45, note 3) that federal and state courts in one state will not take jurisdiction of suits by executors and administrators appointed in another State where the cause of action was one which belonged to the decedent. Dixon's Executors v. Ramsay's Executors, 3 Cranch 319, 323, 2 L.Ed. 453; Kerr v. Moon's Devisees, 9 Wheat. 565, 571, 6 L.Ed. 161; Vaughan v. Northrup, 15 Pet. 1, 5, 10 L.Ed. 639. See Moore v. Mitchell, 281 U.S. 18, 24, 50 S.Ct. 175, 74 L.Ed. 673; Restatement, Conflict of Laws § 507; Atkinson, The Uniform Ancillary Administration and Probate Acts, 67 Harv.L.Rev. 619, 621, note 9. Thus, even if it be true that at the time this action began the Massachusetts probate court had not appointed plaintiff as ancillary administrator, the complaint should not be dismissed for want of plaintiff's capacity to sue.

### III.

. [3] The complaint complies with Fed. Civ.Proc. Rule 23(b). It meets the procedural obligation to set forth with particularity the reasons for plaintiff not making an effort to obtain action from the shareholders.

### IV.

The problem is whether plaintiff, in addition to fulfilling the procedural requirements of the aforesaid Rule 23(b), has also fulfilled, in the terminology of Hausman v. Buckley, 2nd Cir., 299 F.2d 696, 701, the "substantive" conditions precedent with respect to the obligations, if any, of a shareholder, in a derivative action, to make demand upon his fellow shareholders.

### A.

■ The initial inquiry must be what law governs those substantive conditions. The conventional rule is that the local law of the state of incorporation determines the right of a shareholder to participate in the administration of the corporation and to act as its representative in pursuing a claim. See Restatement of the Law Second, Conflict of Laws, Tentative Draft No. 7 (April 16, 1962) § 183, pp. 104–106; Restatement, Conflict of Laws [First] § 183, especially comment (b). Consistently with that principle, the local law of the state of incorporation, in this case Massachusetts law, determines whether before initiating a stockholder's purely derivative action a stockholder must first make application to the stockholders. Hausman v. Buckley, 2nd Cir., 299 F.2d 696, 702, 706; Steinberg v. Hardy, D.Conn., 90 F.Supp. 167, 169; Newman v. Baldwin, 13 Misc.2d 897, 179 N.Y.S.2d 19; Restatement of the Law Second, Conflict of Laws § 183, Reporter's note, p. 105; Ehrenzweig, Conflict of Laws, p. 38.

■ Reference to the law of the state of incorporation to determine whether a stockholder has the substantive right to bring a derivative action for his corporation remains appropriate even if the claim which the corporation has against the alleged wrongdoer is based on a federal statute. It is that principle which explains the opinion of Justice Brandeis in United Copper Securities Co. v. Amalgamated Copper Co., 244 U.S. 261, 264, 37 S.Ct. 509, 510–511, 61 L.Ed. 1119 that "The fact that the cause of action is based on the Sherman Law does not limit the discretion of the directors or the power of the body of stockholders; nor does it give to individual shareholders the right to interfere with the internal management of the corporation." That principle also explains Justice Douglas's opinion in Price v. Gurney, 324 U.S. 100, 107, 65 S.Ct. 513, 516–517, 89 L.Ed. 776 that "nowhere is there any

indication that Congress bestowed on the bankruptcy court jurisdiction to determine that those who in fact do not have the authority to speak for the corporation as a matter of local law are entitled to be given such authority and therefore should be empowered to file a petition in behalf of the corporation." Solomont & Sons Trust, Inc. v. New England Theatres Operating Corp., 326 Mass. 99, 105, 93 N.E.2d 241, 244 is in accord, for there, Massachusetts law governed the right of a stockholder to present a derivative claim of his corporation that it had been injured by contracts which "violated the Federal anti-trust laws." In the light of those authorities this Court declines to follow the contrary doctrine enunciated in Rogers v. American Can Co., 3rd Cir., 305 F.2d 297, 304 col. 2, last paragraph, 317 col. 2, holding that the derivative right of a stockholder to present his corporation's claim of damage for injuries caused by violation of the federal antitrust laws is a right determined by federal law, and cannot be cut off by an honest vote of a majority of the stockholders.

No doubt, in enacting a regulatory statute designed for the benefit of shareholders, such as the Investment Trust Act of 1940, Congress might provide that a stockholder, in addition to his derivative right to assert his corporation's claim, shall have a direct right against a person whose violation of the law causes damage to a corporation and that the direct right of a shareholder to bring such suit shall not be subject to curtailment by the corporation, by the majority of its shareholders, by the local law of the state of incorporation, or by anyone else. But in the present Act there is no express provision to this end. To imply such a direct right, supplementing the derivative right, on the theory there should be a national, not a purely state, rule governing the right of a shareholder to sue on account of a violation of a national statute, or on the theory that it would be an effective way of enforcing a national regulatory statute, of deterring and punishing wrongdoers,

and of assuring shareholders that they would not be mulcted of their assets, is not within the proper exercise of judicial power. But see to the contrary Rogers v. American Can Co., supra, particularly at p. 317 of 305 F.2d. Such an implication, unsupported by statutory text, legislative history, or case law with respect to similar statutes, seems to be impermissible judicial legislation defying principles almost universally accepted, as shown by the Restatements and by the opinions of Justices Brandeis and Douglas for a unanimous Supreme Court.

In short, Massachusetts law governs the substantive right of plaintiff to present derivatively his corporation's claim, and determines whether as a condition precedent, plaintiff must make demand upon his fellow shareholders.

### B.

Massachusetts law with respect to the requirement of demand upon fellow stockholders, depends upon the Massachusetts view of the power possessed by a disinterested majority of stockholders acting in good faith. The latest authoritative pronouncement of the Massachusetts view is Solomont & Sons Trust, Inc. v. New England Theatres Operating Corp., 326 Mass. 99, 93 N.E.2d 241 in which Wilkins, J., now Chief Justice, wrote the opinion.

The Court in Solomont stated 326 Mass. at p. 100, 93 N.E.2d 241:

> "The principal question, presented by the sustaining of pleas to the bill of complaint, is whether an independent, disinterested majority of the stockholders, acting reasonably and in good faith, can effectively vote that in their judgment it is not in the best interest of a corporation to assert on its behalf certain claims against its principal executives and others."

According to plaintiff Solomont's complaint, officers and directors of the corporation in which Solomont held shares had caused the corporation to enter into contracts under which those officers and directors received excessive payments,

and "the contracts are also alleged to have violated the Federal anti-trust laws." (326 Mass. p. 105, 93 N.E.2d p. 244). Shortly before plaintiff sued, "at a meeting of the stockholders * * * a majority, acting reasonably, in good faith, and according to their own judgment as to what was in the best interest of the corporation, had voted not to assert the causes of action upon which the suit is grounded, and in all but one instance had ratified and approved them." (326 Mass. p. 105, 93 N.E.2d p. 244).

The Court noted (326 Mass. p. 111, 93 N.E.2d p. 247):

"Much of the plaintiffs' argument is devoted to limitations upon the power of the stockholders to ratify wrongs to a corporation. Dana v. Morgan, 219 F. 313, 315 (D.C. S.D.N.Y.), affirmed 232 F. 85 (C.C.A. 2). Hodgman v. Atlantic Refining Co., 300 F. 590, 599 (D.C.Del.), certiorari denied 273 U.S. 731 [47 S.Ct. 240, 71 L.Ed. 863] Continental Securities Co. v. Belmont, 206 N.Y. 7, 16–18 [99 N.E. 138, 51 L.R.A.,N.S., 112]. Pollitz v. Wabash Railroad, 207 N.Y. 113, 127 [100 N.E. 721]; United States Steel Corp. v. Hodge, 19 Dick. (N.J.) 807, 814, 817–818 [64 N.J.Eq. 807, 54a–1, 60 L.R.A. 742]. Cook, Corporations (8th ed.) § 730, Fletcher, Cyc. Corporations, § 5795. We shall not rest our decision upon any power to ratify. The question whether it is good judgment to sue is quite apart from the question of ratification. This is a distinction of substance and not of form."

The Supreme Judicial Court held that if, as a matter of honest business judgment, the majority of stockholders voted that there should not be presented corporate claims based on waste of corporate assets, gross breach of fiduciary duty, violation of federal law, and other misconduct which the stockholders lacked power to ratify, a minority stockholder could not thereafter prosecute the corporate claims.

The quotations already given from the Solomont case, the citations in those quotations of leading cases from other jurisdictions which recognize the contrary doctrine that a minority stockholder can bring a suit based on a corporate claim of waste or violation of law, and the thoroughness with which distinguished counsel and the Court examined the questions presented, are persuasive indications that Massachusetts would adhere today to the rule that a minority shareholder cannot bring a derivative suit to enforce a claim that a majority of his fellows in good faith have determined not to present. [Note The Nonratification Rule and the Demand Requirement: The Case for Limited Judicial Review 63 Columbia L.Rev. 1086, 1096–1097.]

There is no reason to suppose that the Massachusetts state court would alter its rule in the light of Gottesman v. General Motors Corp., 2nd Cir., 268 F.2d 194, 197 and Rogers v. American Can Co., 3rd Cir., 305 F.2d 297, 311, 315. Both those cases are bottomed on Continental Securities Co. v. Belmont and Pollitz v. Wabash Railroad, which Wilkins, J. cited and refused to follow. Moreover, in the Rogers case, Forman J.'s opinion acknowledges that he is rejecting the Massachusetts rule. See 305 F.2d at pp. 310–311.

Nor is there any reason to suppose that the Massachusetts Supreme Judicial Court would accept the following criticism in Note, Demand in Derivative Suits, 73 Harv.L.Rev. 746 (1960) at p. 762:

"With due regard to courts and commentators who have concluded that a refusal to sue may be proper though a ratification is not possible, it seems clear that a state's statutory or decisional law which holds certain wrongs nonratifiable evinces a policy which means to give the minority shareholder the power to redress these wrongs after directors and majority shareholders have declined to do so."

Despite what is said in the foregoing note and in some passages in the Gottes-

man and Rogers cases, Judge Wilkins is surely right, in the above quotation from page 111 of the Solomont case [at page 111 of 326 Mass., at page 247 of 93 N.E.2d], that there are differences of substance and policy between the capacity of a corporation to ratify a violation of law and the capacity of a corporation's shareholders to preclude a corporate claim from being civilly pursued. The capacity not to permit a civil suit is closely akin to the capacity to approve a binding settlement at less than 100% of the claim. Where the majority decide that a corporate claim should not be carried further either by them or by any dissenting stockholder, they are not affecting the criminal liability of the wrongdoer, they are not interfering with a presentation of a stranger's claim, they are not guilty of condonation.

The Massachusetts doctrine treats a good-faith majority of shareholders as having the quasi-legislative power to exercise an honest business judgment that it is in the interest of the corporation and its shareholders as a group that a particular corporate claim should not be pressed at all, or not pressed beyond a particular settlement point. No one, presumably, doubts that under some circumstances it may be good business judgment not to press to its possible legal limits a corporate claim against a wrongdoer. Without exhaustive illustration, it is enough to mention the time and effort required of corporate officers to testify in a court proceeding even if a minority stockholder is the active plaintiff; or the effect upon the corporation's public relations of some suits; or the justified reluctance, particularly after a wrongdoer has been removed from responsibility, to exact the last pound of flesh. To be sure, exacting anything less than the last pound may imply that each shareholder's indirect interest in the assets of the corporation may be somewhat less valuable than was theoretically possible. But under the Massachusetts rule each person when he becomes a shareholder accepts a system in which to determine whether a corporate claim shall be pursued, settled, or precluded from any further civil litigation, the authorized tribunal is the majority of the shareholders acting in good faith. Such a system is inherently fair. There are risks in this system,—though the risks may be minimized if it is recognized that a majority of the shareholders can hardly be said to have acted in good faith in cutting off the right of one of their number to present at his own expense a corporate claim unless the majority have given him a fair hearing. [Cf. Note The Non-ratification Rule and The Demand Requirement: The Case For Limited Judicial Review. 63 Col.L.Rev. 1086, 1103–1104.]

Moreover, not to adopt the Massachusetts rule also has its risks. To permit dissenters to override the honest majority's determination that a corporate claim should not be pursued, or not pursued to its legal limit, carries the possibility that no corporate claim can be finally disposed of without judicial approval. It carries the possibility of a dissenter pursuing a claim which though it may prevail will never yield any net amount to the corporate treasury, after the payment of counsel fees and after a fair allowance for the time of the corporate employees in preparing and offering testimony. Reasonable minds may differ as to whether those potential disadvantages are overbalanced by the desirability of supplementing the prosecuting and visitatorial functions of the attorney general, district attorneys, and administrative agencies, by allowing a dissenting stockholder, without specific statutory authority conferred upon him, and against the expressed views of a majority of his fellows, to bring a civil action to vindicate the public interest in deterring malefactors. Minority stockholder suits are unquestionably effective deterrents; yet, like *qui tam* suits, they have mixed consequences in the larger effort to establish the good society.

Massachusetts having resolved the competing considerations by adopting a rule that a majority of shareholders act-

**812**

ing in good faith may preclude a minority from prosecuting a corporate claim, that rule governs a federal court in any case (not only a diversity jurisdiction case) involving a shareholder of a Massachusetts corporation seeking to press derivatively that corporation's claim. The situation is different from a case where a stockholder's claim arises under a national or local law which gives, expressly or impliedly, each stockholder a direct right against a wrongdoer as well as a derivative interest in his corporation's chose-in-action.

### C.

 It is partly because under the Solomont rule in Massachusetts a majority of stockholders acting in good faith have the right to thwart any derivative suit by one of their fellows that a shareholder in a Massachusetts corporation, before he brings a derivative suit, must make demand upon the other stockholders. As Judge Aldrich said in Halprin v. Babbitt (1st Cir., 1963), 303 F.2d 138, 141:

> "The nature and function of this demand admit of some divergence of views. See Note, Demand in Derivative Suits, 73 Harv.L.Rev. 746 (1960). We believe that the form should be a demand that the majority cause proceedings to be instituted, and that the purposes are two. The first is to permit the majority to take some sort of affirmative action itself. The second is to permit the majority to decide, as in Solomont, that no action be taken by anybody."

It is only when the complaint alleges that the majority are corrupt or are otherwise incapable of acting in good faith that the demand upon the body of stockholders may be excused. Bartlett v. N. Y., N. H. & H. R. Co., 221 Mass. 530, 109 N.E. 452; Pomerantz v. Clark, D. Mass., 101 F.Supp. 341; Carroll v. New York, N. H. & H. R. R., D.Mass., 141 F. Supp. 456.

 Plaintiff's excuses set forth in the already quoted paragraph 44 of the complaint do not satisfy the Massachu-

setts rule. Because of the Solomont rule, with respect to Massachusetts corporations, (regardless of the situation with respect to corporations organized under the law of other states, see Note, Demand in Derivative Suits, 73 Harv.L.Rev. 746, 755–758) it does not matter whether, as paragraph 44 alleges, (a) the transactions complained of were incapable of ratification, or (b) the stockholders cannot require the directors to sue, or (c) any suit at the request of the stockholders would be in the hands of the alleged wrongdoers, or (d) demand would be expensive and otherwise burdensome.

Because of the failure to plead that plaintiff complied with the strict Massachusetts rule as to prior demand upon his fellow shareholders in Fund, the complaint fails to state a cause of action.

Complaint dismissed.