SEYMOUR KESSLER, trustee,[1] *vs.* MICHAEL J. SINCLAIR
& others.[2]

No. 93-P-967.

Suffolk. May 16, 1994. - October 27, 1994.

Present: BROWN, KAPLAN, & GILLERMAN, JJ.

*Conflict of Laws. Corporation*, Stockholder's derivative suit, Merger. *Practice, Civil*, Standing.

In the circumstances of the merger under Delaware law of two Delaware corporations, the law of Delaware governed the right of a premerger shareholder to maintain a derivative action. [575, 579]
This court, looking to the law of Delaware, concluded that a shareholder of a corporation that had, in a stock-for-stock exchange, merged into another corporation was entitled to maintain a postmerger derivative action asserting, on behalf of the successor corporation, claims that the directors of the merged corporation had wasted corporate assets. [575-579]

CIVIL ACTION commenced in the Superior Court Department on November 10, 1992.

The case was heard by *R. Malcolm Graham*, J., on a motion to dismiss.

*Thomas V. Urmy, Jr.*, for the plaintiff.
*James L. Ackerman* for Anthony H. Reeves & others.
*Daniel J. Beller*, of New York, for Michael J. Sinclair.

KAPLAN, J. This is a shareholder's derivative action. The plaintiff is Seymour Kessler, as trustee of the Jori Kessler Trust, the owner since 1986 of shares of the common stock of Lifetime Corporation (Lifetime) (engaged in the business of providing to customers health care services and temporary

[1] Of the Jori Kessler Trust, suing derivatively on behalf of Lifetime Corporation.
[2] Anthony H. Reeves, Carl Frischling, Eric J. Gleacher, Theodore Levitt, Raymond S. Troubh, and Lifetime Corporation.

office services).[3] The plaintiff sued on behalf of the corpora-, tion and named as defendants, besides the corporation, Michael J. Sinclair and others, who together comprised its board of directors. In substance, and in some detail, the complaint charged that the directors entered into egregiously improvident transactions with Sinclair, a major shareholder, in respect to his employment by the corporation and his ultimate severance therefrom, thereby causing a waste of corporate resources. The complaint alleges that in so doing the directors, under pressure from Sinclair, had acted upon their own interests without regard to the interests of the corporation, in violation of their fiduciary duties. The plaintiff alleged that he had not made a demand on the directors to cause the corporation to commence suit because demand would be futile.

The defendants moved to dismiss the complaint for failure to state a claim under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974), and under Mass.R.Civ.P. 23.1, 365 Mass. 768 (1974), which requires that the plaintiff state with "particularity" the reasons for his failure to make the effort to obtain action from the directors. The judge allowed the motion and dismissed the complaint. From the judgment, entered on May 6, 1993, the plaintiff appealed.

An event has intervened that requires separate anterior consideration. On July 30, 1993, Lifetime, a Delaware company, was merged into Olsten Corporation (Olsten), also a Delaware company. This was pursuant to a stock-for-stock merger transaction under Delaware law by which Lifetime shareholders turned in their shares and received in exchange shares of Olsten, with Lifetime ceasing to exist as a corporation. The plaintiff Kessler thereby became a shareholder of Olsten. (He does not attack the legality of the merger.)

The defendants have moved in our court to dismiss the appeal on the ground that the plaintiff (appellant) has, by reason of the merger and the translation of his shares into Ol-

---

[3]It was alleged that Kessler's family owned beneficially about 90,000 shares of Lifetime stock with a market value of approximately $1.25 million.

sten shares, lost "standing" to prosecute the appeal and to maintain the lawsuit.[4]

We shall deny the motion to dismiss the appeal. We shall remit the action to the court below for possible amendment of the complaint, as will be indicated.

1. The plaintiff contends that the applicable law on the standing question should be the law of Massachusetts. He points to *Choate, Hall & Stewart* v. *SCA Serv., Inc.*, 378 Mass. 535, 540-542 (1979), where an "interest" or functional approach was taken to the choice of law. As Lifetime's principal place of business was in Massachusetts and Sinclair's employment contract provided that it was to be interpreted according to Massachusetts law, the plaintiff argues that by functional analysis Massachusetts law should govern. But function follows the nature of the question. Here we deal with the effect of merger on the shareholder's capacity to sue on a derivative basis. Implicated is the shareholder's position in relation to the original and surviving corporations, both Delaware companies, merged under Delaware's statutory auspices. The issue is one of corporate governance in the sense of locating who is to exercise control of the alleged corporate claim. In these circumstances, the law of Massachusetts and general law as well direct us to apply the law of the State of incorporation. See *Beacon Wool Corp.* v. *Johnson*, 331 Mass. 274, 279 (1954); *Levitt* v. *Johnson*, 222 F. Supp. 805, 808 (D. Mass. 1963), vacated on other grounds, 334 F.2d 815 (1st Cir. 1964), cert. denied, 379 U.S. 961 (1965); *Hoffman* v. *Optima Sys., Inc.*, 683 F. Supp. 865, 872 (D. Mass. 1988). See also Restatement (Second) of Conflict of Laws § 302 (1971); Annot., What law governs as to shareholder's right to maintain derivative action, 93 A.L.R. 2d 1354 (1964).

2. Section 327 of the Delaware Corporation Law, Del. Code Ann. tit. 8, § 327 (1991), provides: "In any derivative suit instituted by a stockholder of a corporation, it shall be

---

[4]The defendants equate the alleged loss of "standing" with a loss of "subject matter jurisdiction." The rhetoric need not detain us; the question is the same no matter what counsel choose to call it.

averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which he complains or that his stock thereafter devolved upon him by operation of law."[5] The purpose of the statute is "to prevent what has been considered an evil, namely, the purchasing of shares in order to maintain a derivative action designed to attack a transaction which occurred prior to the purchase of the stock." *Rosenthal* v. *Burry Biscuit Corp.*, 30 Del. Ch. 299, 309 (1948).

Delaware decisions go further and say, by way of common-law addendum, that "a plaintiff must be a shareholder at the time of the filing of the suit and must remain a shareholder throughout the litigation." *Kramer* v. *Western Pacific Indus., Inc.*, 546 A.2d 348, 354 (Del. 1988). The general proposition is intended to assure that the plaintiff remains financially interested in the result of the suit and thus a fair representative of other shareholders. So, if the plaintiff sells his shares pending the litigation, he loses standing. See *Hutchison* v. *Bernhard*, 220 A.2d 782, 784 (Del. Ch. 1965).[6] So also it is suggested that if a cashout merger occurs during the litigation by which the plaintiff surrenders his shares for cash, his standing as derivative plaintiff may crash. See *Kramer*, 546 A.2d at 349, 354-355.

Contrast the case of a stock-for-stock merger as in *Blasband* v. *Rales*, 971 F.2d 1034, 1037-1039, 1040-1046 (3d Cir. 1992),[7] applying Delaware law. While the plaintiff Blasband was a shareholder of Easco Hand Tools, Inc. (Easco), directors of that company committed the wrongs complained of related to a note offering and its sequelae. Easco entered into a merger with Danaher Corporation (Danaher) whereby Easco shareholders received .4175 shares of Danaher common stock for each of their shares of Easco common. Easco subsisted as a wholly owned subsidiary of Danaher. After

---

[5] Delaware Ch. Ct. R. 23.1 has a similar provision, as does the parallel Massachusetts rule, both derived from the Federal rule.

[6] In the present action there was an additional plaintiff, one Arthur S. Davis. He sold his shares and accordingly has been dropped from the case by common consent.

[7] See also *Blasband* v. *Rales*, 979 F.2d 324 (3d Cir. 1992).

counsel for the plaintiff vainly sought information from Easco and Danaher, he filed a suit in which, holding his Danaher shares, he sued derivatively on Danaher's behalf to recover against the miscreant directors. *Id.* at 1037-1039. There was an attack on the plaintiff's standing. If § 327 and the common-law annex were to be read together, then the plaintiff did not remain a shareholder throughout (at least of the same corporation). If the common-law annex was read separately, still the plaintiff, in suing on Danaher's behalf, was using his Danaher stock as an indirect means of pressing a claim of the Easco company, of which the plaintiff was no longer a shareholder. The court overcame these difficulties, such as they were, by suggesting (971 F.2d at 1042-1043, 1046) the analogy of a "double derivative" action,[8] as recognized in Delaware law, see *Sternberg* v. *O'Neil*, 550 A.2d 1105 (Del. 1988); *Schreiber* v *Carney*, 447 A.2d 17 (Del. Ch. 1982). But beyond matters of form, the real basis of *Blasband*, which upheld standing, was that the plaintiff had a continuity of interest in the claim, satisfying the dual policies of Delaware law identified above.[9] *Id.* at 1043.

The present case differs from *Blasband* in the circumstance that Lifetime Corporation was by the merger extin-

---

[8]"A 'double derivative' action is a derivative action maintained by the shareholders of a parent corporation or holding company on behalf of a subsidiary company. . . . The wrongs addressed include wrongs directly incurred by the parent corporation as well as those indirectly incurred, because of wrongs suffered by the subsidiary company." *Sternberg* v. *O'Neil*, 550 A.2d at 1107 n.1, citing 13 Fletcher, Cyclopedia of the Law of Private Corporations § 5977 (rev. perm. ed. Supp. 1988).

[9]The court (971 F.2d at 1042-1044) discussed *Lewis* v. *Anderson*, 477 A.2d 1040 (Del. 1984). The plaintiff was a shareholder of "Old Conoco." He filed a derivative action on its behalf against Old Conoco officers and directors for alleged delicts on their part. Shortly after the filing, Old Conoco merged with a wholly owned subsidiary of E. I. DuPont deNemours and Company (DuPont), renamed "New Conoco," Old Conoco ceasing to exist. In a stock for stock exchange, Old Conoco shareholders received shares of common stock of DuPont. *Id.* at 1042-1043. On these facts a derivative action on behalf of Old Conoco — which the plaintiff persisted in seeking to maintain in that form — was quite inapposite, and was dismissed. *Id.* at 1044-1045, 1049-1050. The *Blasband* court (971 F.2d at 1043-1044) suggested that the plaintiff might have maintained a derivative action naming DuPont.

guished as an entity, whereas Easco subsisted. Strictly speaking, analogy to a double derivative action is unavailable here, but the difference is merely factitious. Indeed the present case is easier for the plaintiff, as Lifetime's claim passed to and was absorbed by Olsten itself and the plaintiff owns stock of Olsten, all as a result of the merger. See also *Gollust* v. *Mendell*, 501 U.S. 115 (1991) (continuing standing to sue insiders for "short swing" trading profits).

We note that there are expressions in the Delaware decisions that are positive on standing where the derivative plaintiff after a "reorganization" has the same share in the business enterprise as before, and negative on standing where the merger occurs with an "outside or pre-existing corporation[ ] with substantial assets." See *Schreiber* v. *Carney*, 447 A.2d at 22.[10] The basis for standing is perhaps more readily seen in the former than in the latter situations, but we think standing under Delaware law depends on the carrying out of the policies described. It is true, and the Delaware cases may be suggesting, that where merger is with an unconnected, substantial corporation, and the plaintiff attempts to sue on its behalf, any assertion of lack of disinterestedness of the company's board, one of the alternative bases for justifying omission of demand, may turn out to be hollow. But that alone would not affect standing. And, whatever might be thought of some highly complex merger arrangements in which the original shareholding is radically revised, in the present case we have a simple stock-for-stock exchange with clear continuity of interest.

3. We conclude that the plaintiff will have standing despite the merger to press the alleged claim against Lifetime's directors but this will be derivatively on Olsten's behalf, since Lifetime's alleged claim now belongs to Olsten. See Delaware Corporation Law § 259(*a*), Del. Code Ann. tit. 8, § 259(*a*) (1991), and *Blasband*, 971 F.2d at 1046 n.13.

---

[10]An affidavit of a senior vice president and general counsel of Olsten states that annualized revenues were in excess of $987,434,000 for its last fiscal year prior to July 30, 1993, the date of the merger, and that the comparable figure for Lifetime was $885,578,000.

Compare note 9, *supra.* To this end it would be appropriate to join Olsten formally as a defendant and to amend the complaint on the new footing.[11]

Of course we do not attempt to forecast whether or how the plaintiff will reconstitute his case or how the several defendants may respond.

The substantive elements of an amended complaint on the subject of demand would, again as a matter of corporate governance, be judged for sufficiency by Delaware law. See Block, Radin, & Rosenzweig, The Role of the Business Judgment Rule in Shareholder Litigation at the Turn of the Decade, 45 Bus. Law. 469, 480-482 (1990). Two alternative tests for excusing demand are set out in *Levine* v. *Smith,* 591 A.2d 194, 205 (Del. 1991): "(1) whether threshold presumptions of director disinterest or independence are rebutted by well-pleaded facts; and, if not, (2) whether the complaint pleads particularized facts sufficient to create a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment."[12] As to the exercise of discretion in adjudging "particularity" of the pleading, compare 7C Wright, Miller & Kane, Federal Practice and Procedure § 1831 (1986). See also *Pupecki* v. *James Madison Corp.,* 376 Mass. 212, 219 (1978).

The motion to dismiss the appeal is denied. The judgment appealed from is vacated. The action is remanded to the court below where the plaintiff will be at liberty to join Olsten formally as a defendant and to amend his complaint as he may be advised.

*So ordered.*

---

[11]Olsten has substituted itself as a defendant in the caption of the case on appeal and characterized itself as "successor by merger to Lifetime Corporation." Formal joinder of Olsten would be desirable (with consequent repleading).

[12]See Judge Easterbrook's separate opinion in *Starrels* v. *First Natl. Bank,* 870 F.2d 2d 1168, 1172 (7th Cir. 1989), commenting on a similar statement in *Aronson* v. *Lewis,* 473 A.2d 805, 814 (Del. 1984).