**S. Harold LEVITT, Executor, Plaintiff, Appellant,**

v.

**Edward C. JOHNSON, 2d, et al., Defendants, Appellees.**

**No. 6249.**

United States Court of Appeals First Circuit.

Heard May 5, 1964.

Decided July 8, 1964.

Paul L. Ross, New York City, with whom S. Roy Remar, Boston, Mass., Benedict Wolf, and Wolf, Popper, Ross, Wolf & Jones, New York City, were on brief, for appellant.

Edward B. Hanify, Boston, Mass., with whom Truman S. Casner, Joseph P. Rooney, Ansel B. Chaplin, Sumner H. Babcock, James D. St. Clair, Ropes & Gray, Gaston, Snow, Motley & Holt, Bingham, Dana & Gould, and Hale & Dorr, Boston, Mass., were on brief, for appellees.

Philip A Loomis, Jr., Gen. Counsel, Walter P. North, Assoc. Gen. Counsel, George P. Michaely, Jr., Sp. Counsel, and Paul J. Kemp, Atty., Washington, D. C., on brief for Securities and Exchange Commission, amicus curiae.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

This is a suit by a minority stockholder of Fidelity Capital Fund, Inc., a Massachusetts corporation, on behalf of himself and other interested stockholders for the benefit of the corporation. The defendants, in addition to the corporation, are individuals, now or formerly directors, and several corporations sought to be charged with conduct in violation of the Investment Company Act of 1940, 15 U.S.C. §§ 80a–1 et seq., hereinafter

the act.[1]  The conduct said to be in violation of the act is described in the opinion of the district court, 222 F.Supp. 805, and may be summarized for present purposes as the charging of improper and excessive fees.  The district court dismissed the action solely because of plaintiff's failure to allege a prior demand upon the other stockholders, and did not reach the questions defendants attempted to raise on the merits by a motion for summary judgment.  Defendants draw our attention to this motion as an alternative basis for sustaining the dismissal, but we are disinclined to pass upon such a motion not considered below, absent a clear showing of its inescapable correctness.  This is a complicated action.  The eventual record may well raise issues in a somewhat different form, and we do not wish at this juncture to attempt comprehensive rulings.  For now, we think it sufficient to say that at least some basis for recovery was well pleaded, and that with regard to defendants' claim of acquiescence or waiver there appears to be at least an issue of fact.

■■  The district court correctly decided that the plaintiff had complied with the procedural requirements of F.R.Civ. P. 23(b), by stating, *inter alia,* the reasons he made no prior demands upon the directors and upon the stockholders.  As a matter of substance it is conceded that his reason as to the former, namely, that a majority of the directors were, allegedly, involved in the claimed malfeasance and misfeasance, is adequate.  With respect to the stockholders, plaintiff asserts, *inter alia,*

"Fund has more than 48,000 stockholders scattered all over the United States whose identity is subject to frequent changes.  A demand upon the stockholders to take action would cast an unconscionable financial burden on the plaintiff in that the plaintiff would have to solicit proxies from all of the stockholders residing in every State of the Union and

foreign countries.  It would involve the conduct of a proxy fight, a proxy fight which would entail prohibitive expenses and would cause undue loss of time with the danger that the claims alleged might be barred by the Statute of Limitations."

While defendants contend that this is an inadequate excuse for not making a demand upon the stockholders under what might be termed the federal rule if it, rather than some special rule of some particular state, obtains, we disagree.  We disagree also with their contention that, if there is a difference, the state rule is the one to be applied.

The explanation of our disagreement requires an analysis of the reasons for requiring an a priori demand.  In Halprin v. Babbitt, 1 Cir., 1962, 303 F.2d 138, at 141, in discussing these reasons, we said there were two.  "The first is to permit the majority to take some sort of affirmative action itself.  The second is to permit the majority to decide, as in Solomont [infra], that no action be taken by anybody."  This, however, is not an answer to the present question.  In Halprin v. Babbitt, supra, 92% of the company's stock was held by one stockholder.  We were not, in other words, speaking in the context of 48,000 stockholders, or as to when such a circumstance might constitute an excuse.  Nor does Halprin, which was a diversity case, answer the question of what law presently governs.

The district court stated that the law of the state of incorporation normally determines a stockholder's rights, and that this is so with respect to any derivative action "even if the claim which the corporation has against the alleged wrongdoer is based on a federal statute."  For this it cited United Copper Securities Co. v. Amalgamated Copper Co., 1917, 244 U.S. 261, 37 S.Ct. 509, 61 L.Ed. 1119 and Price v. Gurney, 1945, 324 U.S. 100, 65 S.Ct. 513, 89 L.Ed. 776.  It then stated that it found nothing in the act to suggest that Congress intended to

---

1.  The complaint also charged common law violations, but the dismissal of those causes is not complained of.

**818**

give shareholders "a direct right, supplementing the derivative right." From this it concluded that Massachusetts law must control, and that in view of Solomont & Sons Trust, Inc. v. New England Theatres Operating Corp., 1950, 326 Mass. 99, 93 N.E.2d 241, the plaintiff was not excused from making the demand. It accordingly dismissed the complaint.

Solomont did not involve the present question, but decided solely that a majority of disinterested stockholders could vote that an action against the directors, even though valid, should not be pursued. The district court concluded that this meant that Massachusetts would not excuse a demand on the majority stockholders, unless, following the directors' analogy, they were not disinterested. We do not believe this follows. The fact that a majority of informed disinterested stockholders might decide, for reasons discussed in Solomont, that a suit should not be prosecuted, does not mean that they must be fully instructed in every instance before the suit is instituted. As we pointed out in Halprin v. Babbitt, supra, the minority does not have to obtain the express authorization of the majority before suit is commenced. The demand upon the majority, in other words,

does not have this broad purpose. Neither of the more limited purposes we outlined in Halprin could be accomplished in any real sense unless the demand evoked a full and fair consideration of the issues, in depth, by the other stockholders.[2] If their number is small, as in Halprin, and the minority could reasonably be expected to put its case before them, it should be obliged to do so. However, on the allegations of the present complaint not only would such a burden be enormous, but no disclosure that plaintiff could be expected to make would be likely to persuade a majority to take over the action, or, conversely, permit an informed decision by the majority that the action be not instituted.[3]

As a pointless or, alternatively, impossibly burdensome act it should be excused. Gottesman v. General Motors Corp., 1959, 2 Cir., 268 F.2d 194, 197; Citrin v. Greater New York Industries, S.D. N.Y., 1948, 79 F.Supp. 692, 697; Berg v. Cincinnati, N. & Co. Ry., E.D.Ky., 1944, 56 F.Supp. 842, 845; Pergament v. Frazer, E.D.Mich., 1949, 93 F.Supp. 9, 13: But see Haffer v. Voit, 6 Cir., 1955, 219 F.2d 704, cert. den. 350 U.S. 832, 76 S.Ct. 66, 100 L.Ed. 743; Bruce & Co. v. Bothwell, S.D.N.Y., 1948, 8 F.R.D. 45,

2. For present purposes we are assuming, but not deciding, that under both state and federal law a fully informed majority, unbiased and unled in any way by the directors, might decide over the wishes of the minority that a claim involving a violation of the act should not be pursued: But cf. Rogers v. American Can Co., 3 Cir., 1962, 305 F.2d 297.

3. Nowhere has this been better stated than in the opinion of the district court in Pomerantz v. Clark, D.Mass., 1951, 101 F.Supp. 341, where it was said at 346, "To prevent these minority members from suing until they have acquired the support of a majority of their fellows is in most cases to throttle them. They must move against inevitable inertia which always favors the status quo, the respectable and the powerful, particularly if, regardless of wrongdoing, a particular company has prospered. They rarely have large funds at their command to circularize and arouse their fellows. And,

above all, they are not in a position to state the details of wrongdoing which would persuade unprejudiced men until after they have brought suit and had the advantage of testimonial compulsion." See, also, Baker & Cary, Cases on Corporations (3d ed. 1959), p. 233: "Statistics demonstrate that in most instances stockholder proposals receive a minimal percent of the total votes cast." Newcomer, The Big Business Executive, (1955), p. 9: "In a corporation whose stock is widely distributed the possibility of dissatisfied stockholders mustering the necessary votes to force a change is very slim. It is easier to sell the stock. The cost alone is prohibitive, as was made abundantly clear in the recent New York Central upset. The cost of this proxy battle was estimated to be more than 1 million dollars. [Citing Fortune] Only when the dissatisfied minority has really important holdings, as in the case of the New York Central, is the chance of getting a new deal a real one."

47; Varanelli v. Wood, S.D.N.Y., 1949, 9 F.R.D. 61; Levitan v. Stout, W.D.Ky., 1951, 97 F.Supp. 105, 114.

We need not pursue the inquiry of whether the Massachusetts law is otherwise because if it is, it should not, in our opinion, be applied. In this suit based upon the Investment Company Act the question is not what state law normally determines a shareholder's rights, nor is it whether the act impliedly granted a shareholder a direct personal action, (but cf. Borak v. J. I. Case Co., 7 Cir., 1963, 317 F.2d 838, aff'd 84 S.Ct. 1555), since this does not purport to be one. Rather, the question is whether the act contemplated or impliedly forbade the application to the assertion of derivative rights of what the court concluded to be a "strict Massachusetts rule." In this connection we note in section 1(b) a clear declaration of policy. The act is directed to "the national public interest and the interest of investors * * * adversely affected," and its "purposes * * * with which [its] provisions * * * shall be interpreted, are to mitigate and, *so far as is feasible, to eliminate* the conditions enumerated." (ital. suppl.) We do not see how it can be gainsaid that any substantial stiffening of the conditions precedent to the bringing of stockholders' suits above normal requirements would conflict with this broad declaration.[4] The district court's reasoning that since the stockholder's right is a derivative one his right to bring suit must be controlled by the local law of the state of incorporation in the absence of an explicit congressional direction to the contrary negates the intendment of the act and underestimates the role to be played by the federal courts in the implementation of national regulatory legislation. See Note, 50 Va.L. Rev. 365 (1964).

Our views find support in the Supreme Court's recent opinion in J. I. Case Co. v. Borak, 84 S.Ct. 1555. In that case, involving the Securities Exchange Act of 1934, a stockholder sued to void the merger of his company with another corporation on the ground that the vote to accomplish the merger had been obtained by misrepresentations accompanying the proxy solicitation in violation of section 14(a) of that act. In upholding federal jurisdiction to redress the alleged violations, the Court not only stated that the courts have power to implement the statute by devising appropriate forms of action to effectuate its purposes where Congress had not specifically done so, but rejected the contention that so doing would be an unwarranted interference with domestic regulation at the state level. Particularly pertinent is the following language.

"[W]e believe that the overriding federal law applicable here would, where the facts required, control the appropriateness of redress despite the provisions of state corporation law, * * * [I]f the law of the State happened to attach no responsibility to the use of misleading proxy statements, the whole purpose of the section might be frustrated. Furthermore, the hurdles that the victim might face (such as separate suits, * * * bringing in all parties necessary for complete relief, etc.) might well prove insuperable to effective relief."

4. Our attention has not been called to Rule 20(a) which the SEC has propounded requiring the company, when soliciting proxies, to include stockholder statements not exceeding one hundred words, and consequently no argument has been based upon it. We do not think that any valid argument could be. Assuming that plaintiff were to phrase his demand in the form of a vote to bring suit which had to be put to the stockholders so as to receive the benefit of this rule, any contention that plaintiff could make full disclosure in a 100 word statement (the substantive portion of the present complaint, which is not unduly prolix, fills 13 pages) and receive thoughtful and adequate consideration, would be unrealistic. For discussion of the scope of this rule see Loss, Securities Regulation (2d ed. 1961) 1025, 900. That type of demand in our opinion would be meaningless. For a demand of sufficient proportions, assuming that plaintiff were required to make such, he would be on his own.

We believe a rule under which a demand upon the majority stockholders is a condition that cannot be excused in a case such as this is the type of hurdle that the Investment Company Act, also, forbids.[5]

Judgment will be entered vacating the judgment of the District Court and remanding the action for further proceedings not inconsistent herewith.

---

5. We find nothing to the contrary in the cases cited by the court. United Copper Securities v. Amalgamated Copper Co., supra, held that the fact that the cause of action was based upon an alleged violation of the Sherman Act did not obviate, or reduce, the necessity of a demand by the minority stockholders. This is a quite different situation. As the SEC points out in its amicus brief filed herein in opposition to the "Massachusetts rule," there is a "great difference between the policy underlying the federal antitrust laws and that underlying the Investment Company Act. On the one hand, the policy of the antitrust laws is the preservation and protection of competition in our economy in its broadest scope. Those laws are thus geared to the protection of competing businesses, as businesses, whether in the corporate form or not. On the other hand, the policy of the Investment Company Act is to provide a comprehensive network of restrictions upon the organization, operation and management of investment companies to the end that individual investors might be protected." Price v. Gurney, supra, merely involved a question of the statutory jurisdiction of the bankruptcy court.