**In re KMF * ACTIONS.**
**No. MDL–78 (all cases).**

United States District Court,
D. Massachusetts.

June 7, 1972.

* Kauffman Mutual Fund.

See also Jud.Pan.Mult.Lit., 337 F. Supp. 1337.

Warner & Stackpole, William J. Speers, Jr., Boston, Mass., for Boston Fund, Inc.

Foley, Hoag & Eliot, Lewis H. Weinstein, Boston, Mass., for The Colonial Fund, Inc.

Burns & Levinson, Erik Lund, Boston, Mass., for Eaton & Howard Stock Fund and Eaton & Howard Balanced Fund.

Bingham, Dana & Gould, John J. Curtin, Jr., Boston, Mass., for Fidelity Fund, Inc., Fidelity Capital Fund, Inc., Puritan Fund, Inc., and Salem Fund, Inc. [formerly Dow Theory Investment Fund, Inc.].

Drinker, Biddle & Reath, Patrick T. Ryan, Philadelphia, Pa., for Fidelity Trend Fund, Inc.

Ely, Bartlett, Brown & Proctor, Daniel B. Bickford, Boston, Mass., for Loomis-Sayles Mutual Fund, Inc.

Featherston, Homans & Klubock, Daniel F. Featherston, Jr., Boston, Mass., for Massachusetts Fund.

Sherburne, Powers & Needham, C. Thomas Swaim, Boston, Mass., for Pioneer Fund, Inc.

Palmer & Dodge, Lawrence T. Perera, Boston, Mass., for The Putnam Growth Fund, The George Putnam Fund of Boston, and Putnam Investors Fund, Inc.

Mintz, Levin, Cohn & Glovsky, Haskell Cohn, Boston, Mass., for State Street Investment Corp., and Federal Street Fund, Inc.

Sullivan & Worcester, Robert M. Buchanan, Boston, Mass., for Wellington Fund, Inc., Windsor Fund, Inc., Wellington Management Co., and Walter L. Morgan.

Breed, Abbott & Morgan, Edward J. Ross, New York City, for Affiliated Fund, Inc.

Bruce W. Kauffman, David H. Pittinsky, Carl H. Hanzelik, of Dilworth, Paxson, Kalish, Levy & Coleman, Harold E. Kohn, Aaron M. Fine, Philadelphia, Pa., Joseph B. Kauffman, Atlantic City, N. J., for plaintiff.

Barrett, Knapp, Smith, Schapiro & Simon, Whitman Knapp, New York City, for Axe-Houghton Fund B, Inc., Scudder, Stevens & Clark Common Stock Fund, Inc., Scudder, Stevens & Clark Balanced Fund, Inc., Channing Shares, Inc., Chan-

ning Growth Fund and Channing Balanced Fund.

Reavis & McGrath, Stephen R. Steinberg, New York City, for Bullock Fund, Ltd., and Dividend Shares, Inc.

Walsh & Frisch, E. Roger Frisch, New York City, for Chemical Fund, Inc.

Proskauer, Rose, Goetz & Mendelsohn, Larry M. Lavinsky, New York City, for Energy Fund, Inc., Ralph E. Samuel & Co., and Donald C. Samuel.

Whitman & Ransom, Paul M. O'Connor, Jr., New York City, for Manhattan Fund, Inc.

Emmet, Marvin & Martin, Thomas B. Fenlon, New York City, for National Securities Series, National Securities Stock Series and National Securities Growth Series.

Royall, Koegel & Wells, Stuart A. Jackson, New York City, for The Dreyfus Fund, Inc., The Dreyfus, Corp., and Howard M. Stein.

Roth, Carlson, Kwit, Spengler & Goodell, Robert S. Carlson, New York City, for The One William Street Fund, Inc.

Valicenti, Leighton, Reid & Pine, Albert D. Jordan, New York City, for The Value Line Special Situations Fund, Inc., United Funds, Inc., United Accumulative Fund, United Income Fund, United Science Fund, Arnold Bernhard & Co., Inc., Arnold Bernhard, Waddell & Reed, Inc., and Joe Jack Merriman.

Jenner & Block, Lynne E. McNown, Chicago, Ill., for Selected American Shares, Inc., Security Supervisors and Edward P. Rubin.

Sonnenschein, Levinson, Carlin, Nath & Rosenthal, Otis H. Halleen, Chicago, Ill., for Stein, Roe & Farnham Balanced Fund, Inc., Stein, Roe & Farnham, and Harry H. Hagey, Jr.

Meyers & Matthias, Charles F. Custer, Chicago, Ill., for Technology Fund, Inc., Supervised Investors Services Inc., and John Hawkinson.

Gorsuch, Kirgis, Campbell, Walker & Grover, Leland E. Modesitt, Denver,

Colo., for Financial Industrial Fund, Inc., Financial Programs, Inc., and Thomas J. Herbert.

Berge, Martin & Clark, James A. Clark, Denver, Colo., for Hamilton Funds, Inc.

Frost & Towers, John A. Beck, Washington, D. C., for Washington Mutual Investors Fund, Inc., Johnston, Lemon & Co., and James H. Lemon.

Shereff, Friedman, Hoffman & Goodman, Stanley J. Friedman, New York City, for T. Rowe Price Growth Stock Fund, Inc., and Rowe Price New Horizons Fund, Inc.

O'Melveny & Myers, William W. Vaughn, Los Angeles, Cal., for American Mutual Fund, Inc.

Overton, Lyman & Prince, Carl J. Schuck, Los Angeles, Cal., for The Investment Co. of America.

Morrison, Foerster, Holloway, Clinton & Clark, Robert D. Raven, San Francisco, Cal., for American Express Inv. Fund, Inc.

Peabody, Brown, Rowley & Storey, Cornelius J. Moynihan, Jr., Boston, Mass., for Anchor Growth Fund, Inc. [formerly Diversified Growth Stock Fund, Inc.], Anchor Income Fund, Inc. [formerly Diversified Investment Fund], and Fundamental Investors, Inc.

Putney, Twombly, Hall & Hirson, Howard F. Ordman, New York City, for Group Securities, Inc.

Davis, Polk & Wardwell, E. Michael Bradley, New York City, for Investors Mutual, Inc., Investors Stock Fund, Inc., and Investors Variable Payment Fund, Inc.

Arnold & Porter, Edgar H. Brenner, Washington, D.C., for Investment Co. Institute.

Hill & Barlow, Gael Mahony, Boston, Mass. for Boston Management & Research Co., Inc., Vance Sanders & Co., and Henry T. Vance.

Nutter, McClennen & Fish, John R. Hally, Boston, Mass., for Colonial Man-

agement Associates, Inc., and James H. Orr.

Withington, Cross, Park & Groden, John F. Groden, Boston, Mass., for Eaton & Howard, Inc., and Charles F. Eaton, Jr.

Ropes & Gray, George T. Finnegan, Gaston, Snow, Motley & Holt, Ansel B. Chaplin, Boston, Mass., for Fidelity Management & Research Co., and Edward C. Johnson, 2d.

Franklin R. Johnson, Keystone Custodian Fund, Inc., Boston, Mass., Sullivan & Cromwell, Marvin Schwartz, New York City, for Keystone Custodian Fund, Inc., and Wilfred Godfrey.

Goodwin, Procter & Hoar, Samuel Hoar, Boston, Mass., for Loomis-Sayles & Co., Inc., and Maurice T. Freeman.

Powers & Hall, Douglas Danner, Boston, Mass., for The Massachusetts Co., Inc., and Henry R. Guild.

Hale & Dorr, Jerome P. Facher, Boston, Mass., for Pioneer Management Corp., and Philip L. Carrett.

Dewey, Ballantine, Bushby Palmer & Wood, Judson A. Parsons, Jr., New York City, for Lord, Abbett & Co., and Robert S. Driscoll.

Debevoise, Plimpton, Lyons & Gates, Samuel E. Gates, New York City, for Putnam Management Co., Inc., Charles M. Werly, E. W. Axe & Co., Inc., Louis K. Hyde, Jr., Scudder, Stevens & Clark, and Ronald T. Lyman, Jr.

Milbank, Tweed, Hadley & McCloy, Isaac Shapiro, New York City, for Van Strum & Towne, Inc.

Sullivan & Cromwell, Marvin Schwartz, New York City, for Calvin Bullock, Ltd., Hugh Bullock, F. Eberstadt & Co., Francis S. Williams, Distributors Group, Inc., and Herbert R. Anderson.

Shearman & Sterling, W. Foster Wollen, New York City, for Tsai Management & Research Corp.

White & Case, David Hartfield, Jr., New York City, for Gerald Tsai, Jr.

Hughes, Hubbard & Reed, Robert J. Sisk, New York City, for National Securities & Research Corp., and Philip C. Smith.

Simpson, Thacher & Bartlett, James J. Hagan, New York City, for Lehman Brothers and Allan B. Hunter.

Covington & Burling, Roberts B. Owen, Washington, D. C., for Hamilton Management Corp.

Pollack & Singer, Daniel A. Pollack, New York City, for T. Rowe Price & Associates, Inc., Charles W. Schaeffer, Rowe Price Management Co., Inc., T. Rowe Price, Anchor Corp., and John R. Haire.

Donovan, Leisure, Newton & Irvine, James A. Magee, New York City, for Investors Diversified Services, Inc., and Stuart F. Silloway.

Latham & Watkins, Philip F. Belleville, Los Angeles, Cal., for Capital Research and Management Co., and Jonathan B. Lovelace.

McCutchen, Doyle, Brown & Enersen, Richard Murray, San Francisco, Cal., for American Express Investment Management Co.

## OPINION

PETTINE, Chief Judge.

Important questions of law are raised by several motions to dismiss in this complex and far-reaching litigation.

Plaintiff, a shareholder in four mutual funds,[1] has sued sixty-five mutual funds; thirty-eight investment advisors managing these funds; thirty-seven directors, alleged to be affiliated with

---

[1] The Dreyfus Fund, Inc.; Fidelity Trend Fund, Inc.; Manhattan Fund, Inc.; and The Putnam Growth Fund. It is these four funds that are referred to later as

"the Kauffman funds." The remaining fund defendants other than the Kauffman funds are referred to as the non-Kauffman fund defendants.

the advisors and to be self dealing; and the Investment Company Institute, the trade association representative for the mutual fund industry. The complaint consists of three counts;[2] only Count 1 is pertinent here. Count 1 alleges that all defendants had agreed, combined and conspired to fix and adopt similar schedules of grossly excessive management fees and to refrain from competing for the business of mutual funds and the business of investment advisors in violation of federal antitrust laws.

A decision by the Third Circuit Court of Appeals, Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727 (3rd Cir. 1970), pruned down to one the original several capacities in which plaintiff sought to pursue this action. Plaintiff was allowed to maintain this action only in his capacity as a shareholder suing derivatively on behalf of the four mutual funds in which he owns shares. Kauffman v. Dreyfus Fund, Inc., 434 F.2d at 738.

Count 1 of the action as to all defendants was transferred to this Court by the Judicial Panel on Multidistrict Litigation for pre-trial proceedings.

Defendants have made various motions to dismiss. The four Kauffman fund defendants have moved under Rule 23.1, Fed.R.Civ.P., to dismiss for (1) failure of plaintiff to make demand on the directors of the Kauffman funds that they institute this action and (2) failure of plaintiff to fairly and adequately protect the interests of those he represents, or, alternatively, to strike the appearances of plaintiff's counsel. Two of the Kauffman fund defendants, the Putnam Growth Fund and Fidelity Trend Fund, move to dismiss under Rule 23.1, Fed.R.Civ.P., for failure of plaintiff to make demand on their shareholders to institute this action. The non-Kauffman fund defendants move to dismiss for failure to state a claim against them upon which relief may be granted. The motions will be discussed separately.

1. *Non-Kauffman Fund Defendants' Motion to Dismiss*

■ The non-Kauffman fund defendants have moved to dismiss the action against them on the ground that plaintiff has failed to state or has waived any claims upon which relief can be granted. The motion is made pursuant to Rule 12(b)(6), Rule 12(c), and Rule 56 of the Federal Rules of Civil Procedure. The non-Kauffman fund defendants argue that they are not necessary parties to any relief properly sought on behalf of the Kauffman fund defendants.

Having been limited by the Third Circuit Court of Appeal to pursuing this suit as a derivative action, plaintiff has sued the non-Kauffman funds, their investment advisors and directors on behalf of the Kauffman funds. While plaintiff seeks monetary damages from other defendants, he seeks only injunctive relief against the non-Kauffman fund defendants. Such injunctive relief is sought "enjoining and restraining defendants from continuing to pay or receive grossly excessive management fees or fees calculated solely on the basis of the average net assets of any of their externally managed mutual funds." It is argued that injunctive relief is necessary against the funds to restrain "involuntary conduct forced upon them by the self-dealing directors and the investment advisors who have dominated and controlled them and their personnel."

This being the plaintiff's theory, the non-Kauffman fund defendants argue, then they are but mere pawns manipulated by others and injunctive relief is

---

**2.** Count II alleges violations of the Investment Company Act of 1940, 15 U.S.C. § 80a–1 et seq.
Count III alleges violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78n, the Investment Advisers Act of 1940, 15 U.S.C. § 80b–6, and the Investment Company Act, *supra.*

properly sought against the manipulators, not the pawns. The interests of the Kauffman funds, they argue, are not furthered by seeking injunctive relief against the victims, the non-Kauffman funds. The true interest being asserted by plaintiff in his attempt to seek injunctive relief against them, they argue, is in protecting them from their manipulators, not in protecting the Kauffman funds. Declining to avail themselves of plaintiff's magnanimous veil of protection which retains them in this lawsuit, they argue that plaintiff is foreclosed from attempting to protect the non-Kauffman funds' interests by the decision of the Third Circuit which limited plaintiff to suing derivatively only on behalf of those funds in which he held shares. Thus, they argue, it is inequitable to retain them as parties and the action as to them should be dismissed.

■ It is, of course, well within plaintiff's rights in an antitrust case to select his remedies to seek injunctive relief without seeking monetary damages. 15 U.S.C. § 26; see Hawaii v. Standard Oil Company of California, 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972).

Neither victims of fate nor innocent of their circumstances, these defendants argue disingenuously. Plaintiff's request for injunctive relief against them is not an overreaching attempt to protect the non-Kauffman funds but rather an attempt to insure the practical effect of any judgment in favor of the Kauffman funds. As plaintiff has argued, a competitive market would not necessarily be opened up in the mutual fund industry if the defendant advisors and directors ceased antitrust violations as to the Kauffman funds while the non-Kauffman funds continued to passively accept the fixing of management fees. Furthermore, investment advisors may be changed, see e. g. Rosenfeld v. Black, 445 F.2d 1337 (2d Cir. 1971), as may directors, and it is not unreasonable to

seek relief from the funds themselves to protect against dilution of the injunctive relief by substitution of new *dramatis personae* among the other defendants. Should it be proven that there is a pattern of failure on the part of the independent directors to insure that the bargaining of the advisory contracts is done at arms length and that such a pattern has lead to the antitrust violations, injunctive relief against the funds would prod these directors. The effect of limited competition in the business of providing investment advisory services may be to damage the Kauffman funds.

■ Whether or not plaintiff has suffered actual injury, injunctive relief is available on a showing of significant threat of injury from an impending violation of the antitrust laws or from a continuing violation likely to recur. Zenith Radio Corp. v. Hazeltine, 395 U.S. 100, 130, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).

Affidavits having been submitted to this Court in connection with this motion, the motion is treated as one for summary judgment pursuant to Rule 56. Rule 12(b)(6), Fed.R.Civ.P. In light of plaintiff's allegations that a conspiracy in restraint of trade exists, I am unable to find that there is no genuine issue as to any material fact. "[S]ummary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot." Poller v. Columbia Broadcasting System, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458, quoted in Norfolk Monument v. Woodlawn, 394 U.S. 700, 704, 89 S.Ct. 1391, 22 L.Ed.2d 658 (1969). Nor am I able to say that no set of facts exist which would support a claim for the relief requested here.

The motion to dismiss under Rules 12(b)(6); 12(c); and 56 is denied.

**2.** *Motion of Kauffman Fund Defendants to Dismiss or to Strike Appearances of Plaintiff's Counsel*

The four Kauffman fund defendants, that is, The Dreyfus Fund, Inc.; Fidelity Trend Fund, Inc.; Manhattan Fund, Inc.; and the Putnam Growth Fund, have moved to dismiss the complaint for failure of plaintiff to comply with the requirement of fair and adequate representation under Rule 23.1, Fed.R.Civ.P. They also move to strike the appearances of plaintiff's attorneys because of their "disabling conflict of interests."

Rule 23.1 provides in relevant part:

"The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association."

Shareholders who bring derivative actions are, defendants argue, in the position of trustees for the corporation and thus have a fiduciary obligation to the corporation. In relinquishing his claim to damages from all of the funds, including the Kauffman funds, plaintiff has, they argue, breached his fiduciary duty to "maximize the chances of recovery of those whom he [has] undertaken to represent."

Plaintiff argues that these motions are foreclosed by the law of the case as established in the District Court of New Jersey and the Third Circuit Court of Appeals. Even if these motions are not foreclosed, plaintiff argues, they are without merit and premature.

*The Law of the Case*

Plaintiff has argued that defendants were required to submit all motions attacking standing in the District Court for the District of New Jersey, that these motions should have been made then, that they were not made at that time and so have been waived. "Standing," like "jurisdiction," is a much encompassing concept. In the context of the history of this litigation, I find no waiver.

■ As to whether the law of the case bars defendants from raising this claim of conflict of interest, I find that it does not. The opinion of the Third Circuit Court of Appeals in Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, is restricted to those issues certified to it by the District Court, see 51 F.R.D. 18. This particular claim of conflict of interest was not among the certified questions. For these reasons I turn to the Rule 23.1 issues.

*Fair and Adequate Representation*

■ Plaintiff has fulfilled his duty of fair and adequate representation of the interests of similarly situated shareholders. Regardless of whether plaintiff has relinquished his claim for damages against defendant funds or in fact never asserted such claims, he is under no obligation to seek all available remedies at law and in equity.

Although the analogy to the law of torts is not entirely persuasive, it is instructive. There, a plaintiff is not obliged to sue all wrongdoers from the outset, and, in cases such as those involving abatable nuisances, a plaintiff may seek injunctive relief as a cause of action separate from an action for damages, see Lawlor v. National Screen Service Corporation, 349 U.S. 322, 327–328, 75 S.Ct. 865, 99 L.Ed. 1122, n. 13 (1955).

■ It would be a perversion of the purpose of Rule 23.1 to read it, as defendants do, to require that all available remedies be sought by the plaintiff shareholder. Rule 23.1 does not impose upon the plaintiff shareholder the obligation to champion his company's cause against every and all wrongdoers. While the history of this clause of Rule 23.1 is scant and unenlightening, see Shulman v. Ritzenberg, 47 F.R.D. 202, 210–211 (D.D.C.1969), it would appear that the Rule seeks to protect against collusive suits or situations where the plaintiff's interests are antagonistic to those of

similarly situated shareholders, see 7 C. Wright and A. Miller, Federal Practice and Procedure, § 1765 (1972). There is no argument here of collusion or that the relief sought is detrimental to the interests of the shareholders, only that a further claim for relief in the form of damages should be made. The situation at bar is not one of plaintiff seeking a form of relief in itself detrimental to the best interests of other shareholders, see Maynard, Merel & Co. v. Carcioppolo, 51 F.R.D. 273 (S.D.N.Y.1970), or of plaintiff pursuing this action for ends extraneous to the complaint and antagonistic to the interests of other shareholders, see Nolen v. Shaw-Walker Company, 449 F.2d 506 (6th Cir. 1971).

Contrary to defendants' contentions, it may be that plaintiff has decided that the interests of the shareholders would best be furthered by not pursuing a claim for damages against the defendant funds. It may be that, in the assessment of plaintiff's counsel, the effort to be expended in pursuing such a claim would either not be repaid by an award of damages, or would result in a nominal award. The enormous legal costs and counsel fees thus needlessly accumulated might well be paid out of the award fund and so reduce the amount of the actual award to the Kauffman funds. See Schectman v. Wolfson, 244 F.2d 537 (2d Cir. 1957).

While the transposition of legal concepts should be approached cautiously, in accepting defendants' argument that a shareholder derivative plaintiff is a trustee with fiduciary obligations to the corporation, I would point out that a fiduciary does not usually have a duty to maximize returns, but rather a duty to engage in a course of prudent investment. 54 Am.Jur. Trusts § 414.

The framing of plaintiff's case to seek injunctive relief rather than damages against the defendant funds does not work a hardship on similarly situated shareholders sufficient to invoke dismissal under Rule 23.1. It is doubtful whether either the Kauffman funds or later shareholder derivative plaintiffs would be precluded from seeking damages against mutual fund defendants on the mere fact that here plaintiff seeks only injunctive relief by the doctrines of *res judicata* and collateral estoppel. See Lawlor v. National Screen Service Corporation, *supra.*

For these reasons I cannot accept defendants' contention that plaintiff's "relinquishment" of a damages claim illustrates sufficient conflict of interest on the part of plaintiff's counsel to warrant striking their appearances from the record. Defendants would have plaintiff in a "damned if he does and damned if he doesn't" position. The motion to dismiss is denied; the motion to strike the appearances of plaintiff's counsel is denied.

3. *Motions of the Kauffman Fund Defendants to Dismiss For Failure to Make Demand on Directors and on Shareholders Failure to Make Demand on Shareholders*

Two of the Kauffman fund defendants, The Putnam Growth Fund (Putnam Growth) and Fidelity Trend Fund, Inc. (Fidelity Trend), move to dismiss on the ground that plaintiff has failed to make demand on their shareholders in accordance with Rule 23.1, Fed.R.Civ.P. Rule 23.1 provides that

"the complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires . . ., *if necessary,* from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort."

Putnam Growth and Fidelity Trend argue that general federal law is silent and therefore the issue of whether demand on shareholders is "necessary" must be decided by reference to state law. The law of the state of incorporation, they argue, governs. Putnam Growth, a voluntary association, was organized in Massachusetts as a Massa-

chusetts business trust; Fidelity Trend was incorporated in Massachusetts. Massachusetts follows a strict shareholder demand rule, waiving the requirement only when plaintiff can show that a majority of the voting stock is controlled by the alleged wrongdoers. S. Solomont & Sons Trust, Inc. v. New England Theatres Operating Corp., 326 Mass. 99, 114, 93 N.E.2d 241, 249 (1950). Demand on the shareholders is required even when the shareholders lack power to ratify the wrong.

Massachusetts law governs this issue, they argue, even though a federal cause of action based on the federal anti-trust laws is asserted. They rely on United Copper Securities Company v. Amalgamated Copper Company, 244 U.S. 261, 37 S.Ct. 509, 61 L.Ed. 1119 (1917). *United Copper* involved a shareholders derivative action claiming that the company was damaged by conduct of others in violation of the Sherman Act. *United Copper*, decided before Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), sustained dismissal of the action:

> "The case involves, therefore, this single question: Whether a stockholder in a corporation which is alleged to have a cause of action in damages against others for conduct in violation of the Sherman Act may sue at law to recover such damages in the right of the corporation if, after request, it refuses to institute the suit itself? Insuperable obstacles to the maintenance of the action are presented both by the substantive law and by the law of procedure.
>
> Whether or not a corporation shall seek to enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management, and is left to the discretion of the directors, in the absence of instruction by vote of the stockholders. Courts interfere seldom to control such discretion intra vires the corporation, except where

the directors are guilty of misconduct equivalent to a breach of trust, or where they stand in a dual relation which prevents an unprejudiced exercise of judgment; and, as a rule, only after application to the stockholders, unless it appears that there was no opportunity for such application, that such application would be futile (as where the wrongdoers control the corporation), or that the delay involved would defeat recovery. In the instant case there is no allegation that the United Copper Company is in the control of the alleged wrongdoers, or that its directors stand in any relations to them, or that they have been guilty of any misconduct whatsoever. Nor is there even an allegation that their action in refusing to bring such suit is unwise. No application appears to have been made to the stockholders as a body, or indeed to any other stockholders individually; nor does it appear that there was no opportunity to make it, and no special facts are shown which render such application unnecessary. For aught that appears, the course pursued by the directors had the approval of all the stockholders except the plaintiffs. The fact that the cause of action is based on the Sherman Law does not limit the discretion of the directors or the power of the body of stockholders; nor does it give to individual shareholders the right to interfere with the internal management of the corporation."

244 U.S. at 264, 37 S.Ct. at 510.

Because the complaint fails to set forth efforts by plaintiff to apply to the shareholders, or reasons for not making such application, Putnam Growth and Fidelity Trend argue that the complaint should be dismissed as to them.

Plaintiff responds that the issue of demand on shareholders is to be decided as a matter of federal law; that the policies of the federal antitrust laws would be hindered or defeated by application of the state rule; and that, to the extent

that *United Copper* dictates dismissal of this action, federal law has evolved beyond it. Plaintiff points to the incongruity of applying the Massachusetts rule to result in dismissal of the action against the two Massachusetts funds and not dismissing as to the other two Kauffman funds, which are New York funds, even though "plaintiff has stated an identical cause of action based upon identical facts under the federal antitrust laws over which federal courts have exclusive jurisdiction." Plaintiff also argues that these defendants have waived their right to make this motion. It does not appear to this Court that defendants have waived the right to make this motion.

Defendants have not argued that this Court must apply state law under compulsion of Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. It is, of course, true that the fact that this action is not brought as a diversity action does not necessarily dispose of the *Erie* problems. The *Erie* doctrine applies, whatever the ground for federal jurisdiction, to any issue or claim which has its source in state law. Maternally Yours v. Your Maternity Shop, 234 F.2d 538, 540–541 n. 1 (2d Cir. 1956). In constitutional terms, I think it is clear that *Erie* does not mandate application of state law here inasmuch as this issue is within the legislative competence of the Congress.[3] See Friendly, In Praise of Erie—And of the New Federal Common Law, 39 N.Y.U.L.Rev. 383.

Defendants have argued that this is like the question of the statute of limitations applicable to private antitrust actions, which the Supreme Court has held is "left to the local law by the silence of the statutes of the United States." Chattanooga Foundry & Pipe Works v. Atlanta, 203 U.S. 390, 397, 27 S.Ct. 65, 66, 51 L.Ed. 241 (1906). See also Leh v. General Petroleum Corporation, 330 F.2d 288 (9th Cir. 1964). This view comports with the insight of Professors Hart and Wechsler that "[f]ederal law is generally, interstitial in its nature."[4] Our problem, however, is specifically with the meaning and application of Rule 23.1, Fed.R.Civ.P.

Rule 23.1, Fed.R.Civ.P., requires demand upon shareholders "if necessary." One commentator has considered the meaning of "if necessary" to be:

"This reservation is inserted since a demand upon the shareholders, unlike the demand upon the directors, is intertwined with the substantive law of corporations dealing with the power of shareholders to ratify 'fraud.' "

J. Moore, 3B Federal Practice, paragraph 23.1.19.

While shareholders would seem to lack power to ratify away a violation of the antitrust laws, Rogers v. American Can Co., 187 F.Supp. 532 (D.N.J.1690), aff'd

---

3. That the Congress is empowered to affect "the discretion of the directors" and "the power of the body of shareholders," see *United Copper, supra,* here follows from Levitt v. Johnson, 1 Cir., 334 F.2d 815 and J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964).

4. "Federal law is generally interstitial in its nature. It rarely occupies a legal field completely, totally excluding all participation by the legal systems of the states. This was plainly true in the beginning when the federal legislative product (including the Constitution) was extremely small. It is significantly true today, despite the volume of Congressional enactments, and even within areas where Congress has been very active. Federal legislation, on the whole, has been conceived and drafted on an ad hoc basis to accomplish limited objectives. It builds upon legal relationships established by the states, altering or supplanting them only so far as necessary for the special purpose. Congress acts, in short, against the background of the total corpus juris of the states in much the way that a state legislature acts against the background of the common law, assumed to govern unless changed by legislation."
H. Hart and H. Wechsler, The Federal Courts and the Federal System 435 (1953).

305 F.2d 297 (3rd Cir. 1962), it is clear that under Massachusetts law demand must be made even when shareholders lack authority to ratify the alleged wrong. It has been held that a federal court sitting in diversity on a cause of action arising under state law must apply the strict Massachusetts rule. Pomerantz v. Clark, 101 F.Supp. 341, 345–346 (D.Mass.1951). Thus, it would appear that Rule 23.1, Fed.R.Civ.P. does not in and of itself establish as a rule of federal law that shareholder demand is not required for a non-ratifiable wrong.

As reasoned by Judge Wyzanski in Pomerantz v. Clark, *supra,* one purpose of the demand on shareholders requirement is to provide an opportunity for a *majority* of shareholders to bring derivative suit against the majority of the directors. This purpose was recognized in Halprin v. Babbitt, 303 F.2d 138, 141 (1st Cir. 1962), as was the purpose of allowing the majority to decide to take no action at all.

The First Circuit Court of Appeals has reasoned:

> "Neither of the more limited purposes we outlined in Halprin could be accomplished in any real sense unless the demand evoked a full and fair consideration of the issues, in depth, by the other stockholders. If their number is small, as in Halprin, and the minority could reasonably be expected to put its case before them, it should be obliged to do so. However, on the allegations of the present complaint not only would such a burden be enormous, but no disclosure that plaintiff could be expected to make would be likely to persuade a majority to take over the action, or, conversely, permit an informed decision by the majority that the action be not instituted.
>
> As a pointless or, alternatively, impossibly burdensome act it should be excused."

Levitt v. Johnson, 334 F.2d 815, 818 (1st Cir. 1964).

The same reasoning might apply here for two reasons. First, Fidelity Trend and Putnam Growth had, plaintiff alleges, 252,900 and 97,432 shareholders as of December 31, 1967. This exceeds the 48,000 in *Levitt,* which number the Court felt was too large to reasonably require demand on the shareholders. Second, the allegations of the complaint in *Levitt* were summarized as claims of charging of improper and excessive fees in a mutual fund, 334 F.2d 815 at 817, as the complaint alleges here. The burden of disclosure sufficient to allow the majority of shareholders to make an informed decision is enormous here as in *Levitt.*

*Levitt* was a derivative suit on behalf of shareholders of a Massachusetts mutual fund alleging violations of the Investment Company Act of 1940, 15 U.S. C. § 80a–1 et seq. The alleged conduct in violation consisted of the charging of improper and excessive fees. *Levitt* held that in view of the national policy of securities regulation embodied in the Investment Company Act, the application of a strict shareholder demand rule which negated this policy was, as a matter of federal law, forbidden.

*Levitt,* might, then, be thought to argue for excuse of the shareholder demand requirement here. However, *Levitt* expressly distinguished cases involving alleged violations of the antitrust laws:

> "United Copper Securities v. Amalgamated Copper Co., supra, held that the fact that the cause of action was based upon an alleged violation of the Sherman Act did not obviate, or reduce, the necessity of a demand by the minority stockholders. This is a quite different situation. As the SEC points out in its amicus brief filed herein in opposition to the 'Massachusetts rule,' there is a 'great difference between the policy underlying the federal antitrust laws and that underlying the Investment Company Act. On the one hand, the policy of the antitrust laws is the preservation and

protection of competition in our economy in its broadest scope. Those laws are thus geared to the protection of competing businesses, as businesses, whether in the corporate form or not. On the other hand, the policy of the Investment Company Act is to provide a comprehensive network of restrictions upon the organization, operation and management of investment companies to the end that individual investors might be protected.' "

334 F.2d at 820 n. 5.

Bound to follow the mandate of the circuit court, I feel I must, on the basis of this footnote 5 in *Levitt*, grant the motion to dismiss.

*Failure to Make Demand on Directors*

■ The four Kauffman fund defendants move to dismiss on the ground that the complaint does not set forth with particularity the efforts made by plaintiff to obtain the desired action from the Kauffman fund directors or the reasons for not making efforts. Rule 23.1, Fed.R.Civ.P. provides, in pertinent part:

"The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the actions he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort."

The allegations of the complaint relevant here are as follows:

"10. Demand by plaintiff that defendant externally managed mutual funds or any other externally managed mutual funds affiliated therewith or related thereto bring this action would have been futile and, therefore, was not made.

\*     \*     \*     \*     \*     \*

"23. At all times material to the Complaint:

(a) the self-dealing and affiliated directors and their respective investment advisers have dominated and controlled their respective externally managed mutual funds and their personnel, policies and boards of directors; and

(b) the self dealing and affiliated directors have dominated and controlled their respective investment advisers and their personnel, policies and boards of directors.

"24. At all times material to the Complaint, the contracts and other forms of agreement between the defendant investment advisers and their respective externally managed mutual funds have not been either the subject or the result of arm's-length bargaining between them.

"25. Pursuant to said contracts and other forms of agreement, defendant investment advisers receive for their respective investment advisory and management services a fee calculated solely on the basis of their respective mutual funds' average net assets ('management fees')."

Kauffman defendants argue that the allegations of the complaint are insufficient, being mere empty conclusions. The lack of substance in such conclusions, they argue, is demonstrated, *inter alia*, by the fact that at the time of the complaint, federal law provided that at least 40% of the board of any investment company should be composed of independent directors. Investment Company Act of 1940, Section 10(a), 15 U.S.C. § 80a–10(a). Such independent directors, they argue, cannot as a matter of law be presumed to be "controlled," Investment Company Act of 1940, Section 2(a)(9), 15 U.S.C. § 80a–2(a)(9), and should have been allowed to consider a demand by plaintiff to take action. They also argue certain policy reasons for strict enforcement of the director demand requirement. See Note, Demand on Directors and Shareholders as

a Prerequisite to a Derivative Suit, 73 Harv.L.Rev. 746 (1960).

Plaintiff answers that due to their posture in prior proceedings in this case, the Kauffman fund defendants have waived their right to make this motion and that, in any event, plaintiff, under federal law, has satisfied Rule 23.1.

Concluding that there has been no waiver, this Court looks to the substance of the Rule 23.1 claim.

This case presents the intersection of the rule that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), with the requirements of Rule 23.1, Fed.R.Civ.P., that the complaint allege with particularity plaintiff's reasons for not making demand on directors.

Plaintiff has alleged that such demand would be futile because "the self-dealing and affiliated directors and their respective investment advisors have dominated and controlled their respective externally managed mutual funds and boards of directors." If Rule 23.1 is to be more than a nicety of pleading and is to safeguard corporations from abuse, see Note, Demand on Directors and Shareholders as a Prerequisite to a Derivative Suit, 73 Harv.L.Rev. 746 (1960), it must mandate that there be some merit to allegations of "futility" of demand. Plaintiff has not sufficiently shown the merits of his allegations of futility. Cf. Meltzer v. Atlantic Research Corp., 330 F.2d 946 (4th Cir. 1964).

As defendants have argued by attested affidavits, the majority of each of the boards of directors of the Kauffman funds is composed of non-affiliated directors. The complaint does not charge these "independent" directors with specific misconduct, as it does the affiliated directors. It rather alleges that these non-affiliated directors are "controlled." In light of an express statutory presumption contained in the Investment Company Act of 1940, 15 U.S.C. § 80a–2(a)(9) that "[a] natural person shall be presumed not to be a controlled person within the meaning of this subchaper," I do not find that plaintiff has shown adequate reason to excuse himself from making demand on the boards of directors. This is not a case where the majority of the board of directors are the accused wrongdoers. While the utility of independent directors has been criticized, see e. g. Nutt, A Study of Mutual Fund Independent Directors, 120 U.Pa.L.Rev. 179, 184–185 (1971), I cannot assume that the non-affiliated directors of these particular funds have been lax in their duties or that appeal to the majority of the boards would be "futile."

The motion to dismiss of the four Kauffman funds for failure to make demand on directors is granted. Defendants shall prepare an order reflecting these rulings.